## CURTIS v. RAILROAD PERISHABLE INSPECTION AGENCY.

### Civil Action No. 6346.

District Court, D. Massachusetts.

April 21, 1947.

William T. McCarthy, U. S. Atty., and William J. Koen, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Paul F. Perkins and Richard W. Hall, both of Boston, Mass., for defendant.

SWEENEY, District Judge.

There is before me a motion for summary judgment based upon the pleadings and the affidavit of one W. J. Alberts, a District Inspector of the defendant. The affidavit was not filed in support of plaintiff's motion for summary judgment, but was filed pursuant to a request from the Court so as to enlarge the facts as they appear in the pleadings. This action was brought under Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S. C.A.Appendix, § 308(e).

### Findings of Fact.

There seems to be no dispute about the facts, which are as follows:

The plaintiff was employed by the defendant as a part-time or spare cooper on March 11, 1942. On July 20, 1942, he left the defendant's employ and enlisted in the Navy. On January 23, 1946, he was honorably discharged from Navy, and on February 6, 1946, he applied for reemployment with the defendant and was given his old job as a part-time cooper. Shortly thereafter he was given the status of a full-time or regular cooper, this advancement being occasioned by reason of his accrued seniority consistent with the requirements of the Selective Training and Service Act.

The plaintiff was not a member, although he had sought membership, of a union known as "Lodge 840, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, American Federation of Labor" (which will be referred to hereinafter as the "Union"). He had attempted, both before entering the Navy and after his return, to become a member of the Union but they had not admitted him to membership. After the plaintiff had been advanced to the position of a regular cooper, certain representatives of the Union protested and asked that he be relegated to the ranks of spare coopers, junior to any members of the Union who might be available for employment as regular coopers. There was no closed-shop contract between the defendant and the Union. If any such arrangement had been in fact put into effect during the period when the plaintiff was in the naval service, it could have no effect upon his rights. Fishgold v. Sullivan Drydock & Repair Corp., 328

U.S. 275, 66 S.Ct. 1105, and Feore **v.** North Shore Bus Co., Inc., D.C., 68 F.Supp. 1014.

The defendant, believing that it was acting legally, refused to demote the plaintiff and, as a result of its refusal, the Union called a strike. This strike was called on April 9, 1946, at the Boston and Maine Railroad Fruit Terminal. A "sympathy strike" was called at the New Haven Railroad's Boston Market Terminal, and approximately $850,000 worth of perishable goods were tied up for the following four days. The impasse between the Union and the defendant was broken only by an agreement entered into by W. J. Alberts, for the defendant, and John F. Noonan, General Chairman of the Union, which agreement reads as follows:

"Memorandum of Stipulation arrived at in conference, April 12, 1946, Boston Market Terminal, between representatives of the Railroad Perishable Inspection Agency, on the one hand, and representatives of Local 840 of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Affiliated with American Federation of Labor.

"Members of said Local 840 are now on strike, which has caused stoppage of their work at the Boston Market Terminal. They will return to work tonight, upon assurance given by representatives of the Railroad Perishable Inspection Agency that it will restore one W. N. Maginnis to a position of regular employment upon its roster; and also will place one "Richard Curtis on its spare list, in a position behind (junior to) all Union-member employees, pending a ruling either by U. S. Attorney at Boston, or by Massachusetts State Selective Service Headquarters at Boston, or both, as to whether, under provisions of the Selective Service Act, the Railroad Perishable Inspection Agency, by law, is obligated to accord seniority to the said Richard Curtis on the roster of the Railroad Perishable Inspection Agency."

Upon the signing of this agreement, the employees returned to work, and the plaintiff was demoted to the position of a spare cooper. Thereafter, upon request and in accordance with the terms of the agreement, the United States Attorney rendered an opinion to the effect that the veteran should be restored to the position of a regular cooper, and that he had seniority under the Selective Training and Service Act over all persons employed after March 11, 1942, irrespective of Union affiliation.

■ The defendant admits that it has failed to reinstate the plaintiff, and in substance states that it is fearful of a retaliatory strike by the Union. This Court cannot assume that the Union would take such an illegal step. While the Union has not sought to become a party to this action, and the defendant's motion to bring in the Union as a third party has been denied, their presence or absence here can have no effect upon this decision, for in Fishgold v. Sullivan Drydock & Repair Corp., supra [328 U.S. 275, 66 S.Ct. 1111], in which a union was a party to the action, the United States Supreme Court ruled that " * * * no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act".

### Conclusions of Law.

■ The defendant has illegally attempted to demote or discharge this plaintiff. It is ordered to reinstate him as a regular cooper with seniority over all other persons employed since March 11, 1942, irrespective of their Union affiliations. If the parties cannot agree upon the interim damages to be paid by the defendant to the plaintiff, upon further application to this Court that adjudication will be made. A copy of this opinion and any order pursuant thereto shall be delivered to the proper Union officials for their information, pursuant to the terms of the agreement entered into between the employer and the Union.