FISHGOLD *v.* SULLIVAN DRYDOCK & REPAIR CORP. ET AL.

No. 970. Argued May 6, 1946.—Decided May 27, 1946.

276

*Assistant Attorney General Sonnett* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Frederick Bernays Wiener, Robert L. Werner, Searcy L. Johnson, Paul A. Sweeney, Abraham J. Harris* and *Cecelia Goetz.*

*J. Read Smith* argued the cause and filed a brief for the Sullivan Dry Dock Corporation, respondent.

*M. H. Goldstein* argued the cause and filed a brief for Roy Granata, respondent.

*Ralph B. Gregg* filed a brief for the American Legion, as *amicus curiae*, urging reversal.

Briefs were filed as *amici curiae* by *Joseph A. Padway* and *Herbert S. Thatcher* for the American Federation of Labor, by *Frank L. Mulholland, Clarence M. Mulholland* and *Willard H. McEwen* for the Railway Labor Executives' Association, and by *Lee Pressman, Eugene Cotton, Frank Donner, John J. Abt, Isadore Katz, Lindsay P. Walden, Ben Meyers, William Standard* and *Leon M. Despres* for the Congress of Industrial Organizations and certain affiliated organizations, in support of respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner is an employee of the Sullivan Drydock & Repair Corporation. He entered its employ in 1942 and

278

worked for it at a shipyard until he was inducted into the Army in 1943. He served in the Army a little over a year and was honorably discharged and received a certificate to that effect. He had worked for the corporation as a welder and, after his tour of duty in the Army ended, he was still qualified to perform the duties of a welder. Within forty days of his discharge, he applied to the corporation, as was his right under the Selective Training and Service Act of 1940, 54 Stat. 885, 50 U. S. C. App. § 301, for restoration to his former position.[1] He was reemployed as a welder on August 25, 1944.

---

[1] The Act provides in part:

"SEC. 8 (a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 3 (b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. . . .

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

"(A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay;

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; . . ."

The forty-day period has been extended to ninety days. Section 8 (b) as amended in 1944, 58 Stat. 798, gives the veteran a right to be reemployed if he makes application "within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year."

The corporation and Local 13 of the Industrial Union of Marine and Shipbuilding Workers of America had a collective bargaining agreement which provided: [2]

"Promotions and reclassifications and increases or decreases in the working force shall be based upon length of service and ability to do the job. Wherever between two or more men, ability is fairly equal, length of service shall be the controlling factor."

As work at the shipyard decreased, men would be laid off. The men selected by the foremen, on the basis of ability and seniority, to be laid off would report to a department head for reassignment on the basis of their relative seniority when work became available. On each of nine days in the spring of 1945 petitioner was laid off although other welders, not veterans of the recent war, possessing the same or similar skill as petitioner, were given work on those days. These men were preferred because they had a higher shop seniority than petitioner. The decision to lay off petitioner followed a decision of an arbitrator who ruled that the seniority provisions of the collective bargaining agreement, which we have quoted, required it and

---

[2] The agreement also provided:

"Any employee other than a probationary employee who is drafted or volunteers for the Naval, Military or Merchant Marine Service of the United States, shall retain his seniority standing. In any further determination of said employee's seniority status, the length of time spent by the employee in such service shall count toward his seniority as if he were actually and continuously employed by the Company. Any such employee who volunteers or is drafted must give the Company notice of his intention to so leave his employment. Any such employee who, within forty (40) days after his release or discharge from said service applies for re-employment, shall be rehired by the Company, provided work is available and the employee is reasonably fit for duty. Availability for work will be determined according to accumulated seniority and ability. If re-employed, said employee shall then receive the then current rate of pay for the job for which he is re-employed."

that they were not inconsistent with the provisions of the Selective Training and Service Act of 1940.

Thereupon petitioner brought this suit, pursuant to § 8 (e) of the Act,[3] to obtain a declaratory judgment as to his rights under the Act and to obtain compensation for the days he was not allowed to work. The corporation answered, justifying its action by the provisions of the collective bargaining agreement and the decision of the arbitrator. The union was permitted to intervene.[4] It alleged in its answer that the action of the corporation was warranted by the provisions of the collective bargaining agreement and was not in violation of the Act. The District Court refused the declaratory judgment requested,

---

[3] Section 8 (e) provides:

"In case any private employer fails or refuses to comply with the provisions. of subsection (b) or subsection (c), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. The court shall order a speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States district attorney or comparable official for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States district attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof to specifically require such employer to comply with such provisions: *Provided*, That no fees or court costs shall be taxed against the person so applying for such benefits."

The United States appeared as *amicus curiae* in the Circuit Court of Appeals. It appears in this Court as representative of petitioner by reason of the provisions of § 8 (e).

[4] Permissive intervention is governed by Rule 24 (b) of the Rules of Civil Procedure which allows it on timely application "when an applicant's claim or defense and the main action have a question of law or fact in common."

but entered a money judgment for petitioner for the loss of wages during the nine days in question. 62 F. Supp. 25. It held that petitioner was laid off in violation of the Act. It was also of the view that the collective bargaining agreement was not inconsistent with the Act. Only the union appealed. The Circuit Court of Appeals reversed, one judge dissenting. 154 F. 2d 785. It held that the Act did not give petitioner the preference which he claimed and that the terms of the collective bargaining agreement justified the corporation's action. The case is here on a petition for a writ of certiorari which we granted because of the importance of the question presented.

I. We are met at the outset with the claim that the union had no appealable interest in the judgment entered by the District Court and accordingly that the Circuit Court of Appeals lacked jurisdiction to entertain it. It is pointed out that a money judgment was entered only against the corporation and that no relief was granted against the union. It is therefore argued that the judgment did not affect any substantive right of the union and that at most the union had merely an interest in the outcome of litigation which might establish a precedent adverse to it. *Boston Tow Boat Co. v. United States*, 321 U. S. 632. It is also pointed out that the statutory guarantee against discharge without cause for one year [5] had

---

[5] Section 8 (c) of the Act provides:

"Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

Paragraphs (A) and (B) of subsection (b) of § 8 are set forth in note 1, *supra*.

expired at the time of the District Court's judgment, that therefore no declaratory relief was granted, and that petitioner's rights for the future were not adjudicated. It is contended that the dispute between petitioner and the union has thus become moot.

But that argument misses the point. The answer of the corporation and the union put in issue the question whether there was a conflict between the collective bargaining agreement and the Act and, if so, which one prevailed. The parties to the collective bargaining agreement—the union and the corporation—were before the court. A decision on the merits of petitioner's claim necessarily involved a reconciliation between the Act and the collective bargaining agreement or, if it appeared that they conflicted, an adjudication that one superseded the other. As we have noted, the District Court was of the view that the collective bargaining agreement was not inconsistent with the Act. But, however the result might be rationalized, a decision for or against petitioner necessarily involved a construction of the collective bargaining agreement. That issue was adjudicated, with the union as a party. Hence, if the union had thereafter instituted a separate suit for an interpretation of the agreement, it would be met with the plea of *res judicata*. And that plea would be sustained, for the prior decision was on the precise point which the union sought to relitigate and was adverse to the union. And both parties to the agreement—the union and the corporation—were parties to the prior suit. This elementary principle has long been recognized. Black, The Law of Judgments (2d ed.), pp. 764, 821, 936. As stated in *Cromwell* v. *County of Sac*, 94 U. S. 351, 352, a prior judgment "is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter

which might have been offered for that purpose." And see *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413, 415; *Grubb* v. *Public Utilities Commission,* 281 U. S. 470, 479; *Stoll* v. *Gottlieb,* 305 U. S. 165; *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371, 375, 378. The case of *Boston Tow Boat Co.* v. *United States, supra,* would be relevant if the collective bargaining agreement in issue was one between different parties.[6] Then the union's interest would be merely the interest of one seeking reversal of an adverse precedent. And its "independent right to relief" would not be increased by reason of its intervention in the cause. *Alexander Sprunt & Son* v. *United States,* 281 U. S. 249, 255. But here the rights of the union and its members under a contract with the corporation were adjudicated in a proceeding in which the union was a party. The contract was still in existence at the time of the appeal. Hence the case was not moot. And the only way the union could protect itself against that binding interpretation of the agreement was by an appeal. For then the union found itself in the position where a right of its own (*Alexander Sprunt & Son* v. *United States, supra,* p. 255) was adjudicated.[7]

It is suggested, however, that the result of what we do is to free the union and the employer from costs and burden Fishgold with them. There are several answers to that. The allowance of costs has no bearing on what

---

[6] In that case Boston Tow Boat Co. intervened in a proceeding before the Interstate Commerce Commission involving the status of another carrier. It sought to appeal from the adverse decision against the other carrier. That right was denied. The order in question was not determinative of the status of Boston Tow Boat Co. That question was involved in another order of the Commission from which Boston Tow Boat Co. had an appeal pending.

[7] The case is therefore closely analogous to one where the interest of an intervenor in property involved in the litigation was adjudicated. *Dexter Horton National Bank* v. *Hawkins,* 190 F. 924; *United States* v. *Northwestern Development Co.,* 203 F. 960.

is or what is not *res judicata*. Their allowance to the prevailing party is not, moreover, a rigid rule. Under the Rules of Civil Procedure the court can direct otherwise. Rule 54 (d). And finally, Congress has provided in § 8 (e) of this Act that when a veteran applies to the District Court for the benefits of the Act "no fees or court costs shall be taxed" against him.

II. We turn then to the merits. The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind.

These guarantees are contained in § 8 of the Act [8] and extend to a veteran, honorably discharged and still qualified to perform the duties of his old position. (1) He has a stated period of time in which to apply for reemployment.[9] § 8 (b). He is not pressed for a decision immediately on his discharge but has the opportunity to make plans for the future and readjust himself to civilian life. (2) He must be restored to his former position "or to a position of like seniority, status, and pay." § 8 (b) (A), (B). He is thus protected against receiving a job inferior to that which he had before entering the armed services. (3) He shall be "restored without loss of seniority" and be considered "as having been on furlough or leave of absence" during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8 (c). Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise

---

[8] Section 8 (b) is set forth in note 1, *supra,* and § 8 (c) in note 5, *supra.*

[9] As we have noted, the original forty-day period has been extended to ninety days. See note 1, *supra.*

point he would have occupied had he kept his position continuously during the war. (4) He "shall not be discharged from such position without cause within one year after such restoration." § 8 (c).

Petitioner's case comes down to the meaning of this guarantee against "discharge." "Discharge" is construed by him to include "lay-off." And it is earnestly argued that Congress could not have intended to restore the veteran to his position, prevent his discharge without cause for one year, and yet not intend that he perform actual work if it was available.

This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See *Boone* v. *Lightner*, 319 U. S. 561, 575. And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits.

We can find no support for petitioner's position in the provision of § 8 (b) which restores him to his former position or to a "position of like seniority." Nor can we find it in § 8 (c) which directs that he "shall be so restored without loss of seniority." As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed serv-

ices. We agree with the Circuit Court of Appeals that by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible. No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more.

Nor can we read into the guarantee against discharge "from such position" a gain or step-up in seniority. That guarantee does not in terms deal with the seniority problem. The problem of seniority is covered by the preceding provisions. The guarantee against discharge "from such position" is broad enough to cover demotions. The veteran is entitled to be restored to his old position or to a "position of like seniority, status, and pay." If within the statutory period he is demoted, his status, which the Act was designed to protect, has been affected and the old employment relationship has been changed. He would then lose his old position and acquire an inferior one. He would within the meaning of § 8 (c) be "discharged from such position." But the guarantee against discharge does not on its face suggest the grant of a preference to the veteran over and above that which was accorded by the seniority of "such position."

Discharge normally means termination of the employment relationship or loss of a position.[10] In common parlance and in industrial parlance a person who has been laid off by operation of a seniority system and put on a waiting list for reassignment would hardly be considered

---

[10] "Release or dismissal from an office, employment, etc.; as, the *discharge* of a workman." Webster's New International Dictionary (2d ed.).

"To relieve of a charge or office; (more usually) to dismiss from office, service, or employment; to cashier." Oxford English Dictionary.

as having been "discharged." [11] There are three terms used in § 8 (c) which relate to various types of cessation of work—a "furlough," a "leave of absence" and a discharge. A furlough is not considered a discharge. It is a form of lay-off. So is a leave of absence. And whether either results from unilateral action by the employer or otherwise, consequences are quite different from termination of the employment relationship. Section 8 (c) of the Act recognizes that insurance and other benefits may continue to accrue to an employee on furlough or on leave of absence. An employee on furlough or on leave of absence has a continuing relationship with the employer; he retains a right to be restored to work under specified conditions.[12] Thus when Congress desired to cover the contingency of a lay-off, it used apt words to describe it. If it had desired to enact that, so long as there was work, no restored veteran, regardless of seniority, could be temporarily laid off during the year following his restoration, when the slackening of work required a reduction in forces, we are bound to believe that it would have used a word of the kind which it had itself recognized as being descriptive of that situation.

The "position" to which the veteran is restored is the "position" which he left plus cumulated seniority. Certainly he would not have been discharged from such po-

---

[11] Temporary suspension of an employee's work commonly does not affect the continuance of his status. See *Labor Board* v. *Waterman S. S. Co.*, 309 U. S. 206; *North Whittier Heights Citrus Assn.* v. *Labor Board,* 109 F. 2d 76, 82.

"Lay-off" is defined as "A period during which a workman is temporarily dismissed or allowed to leave his work; that part or season of the year during which activity in a particular business or game is partly or completely suspended; an off-season." Oxford English Dictionary, Supp.

[12] See Union Agreement Provisions, Bureau of Labor Statistics, Department of Labor, H. Doc. No. 723, 77th Cong., 2d Sess., chs. 8, 14.

sition and unable to get it back, if at the time of his induction into the armed services he had been laid off by operation of a seniority system. Plainly he still had his "position" when he was inducted. And in the same sense he retains it though a lay-off interrupts the continuity of work in the statutory period. Moreover, a veteran on his return is entitled to his old "position" or its equivalent even though at the time of his application the plant is closed down, say for retooling, and no work is available, unless of course the private employer's "circumstances have so changed as to make it impossible or unreasonable" to restore him. § 8 (b) (B). He is entitled to be recalled to work in accordance with his seniority. His "position" exists though no work is then available. The slackening of work which causes him to be laid off by operation of a seniority system is neither a removal or dismissal or discharge from the "position" in any normal sense. Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems and to protect him against loss under them by reason of his absence. There is indeed no suggestion that Congress sought to sweep aside the seniority system. What it undertook to do was to give the veteran protection within the framework of the seniority system plus a guarantee against demotion or termination of the employment relationship without cause for a year.

The construction which we have given "discharged" does not rob that guarantee of vitality. As the Circuit Court of Appeals observed, where there is a closed-shop agreement the union would normally afford its members protection against termination of their employment status without cause. But in many situations the guarantee against dismissal without cause for one year is of great

practical importance and is a protection granted veterans only.

Our construction of the Act finds support in its legislative history. Representative May had charge of the bill on the floor of the House. He explained an amendment to § 8 (c), which added the words "shall be considered during the period of service in such forces as on furlough or leave of absence" and also elaborated the clause dealing with "insurance or other benefits." He said:

> "I may say that the chief purpose of the amendment is to preserve the seniority rights of the thousands and hundreds of thousands of railroad employees and other employees of that character who have certain seniority privileges on the railroads. In other words, we put them on furlough during the time they are in the service and they will even be permitted to count this time on the question of their retirement." 86 Cong. Rec. 11702.

And before that amendment the Committee Report of the Senate stated:

> "The Congress, in this bill, has declared as its purpose and intent that every man who leaves his job to participate in this training and service should be reemployed without loss of seniority or other benefits upon his return to civil life." S. Rep. No. 2002, 76th Cong., 3d Sess., p. 8.

We have searched the legislative history in vain for any statement of purpose that the protection accorded the veteran was the right to work when by operation of the seniority system there was none then available for him.

It is said, however, that when Congress amended § 8 of the Act in 1944[13] (58 Stat. 798) and extended the Act in 1945 without any change in § 8 (c) (59 Stat. 166), it was apprised of an administrative interpretation of § 8 (c) that

[13] See note 1, *supra.*

a veteran was entitled to his former job regardless of seniority; and that therefore congressional approval of or acquiescence in the administrative construction would be inferred. See *Massachusetts Mutual Life Ins. Co.* v. *United States,* 288 U. S. 269, 273, and cases cited. An administrative interpretation was rendered by the Director of Selective Service who was authorized to administer the Act.[14] He had ruled that the Act required reinstatement of a veteran to "his former position or one of like seniority, status, and pay even though such reinstatement necessitates the discharge of a nonveteran with a greater seniority." [15] But a different construction was given to § 8 (c) by the National War Labor Board in its handling of disputes arising out of the negotiation of collective bargaining agreements.[16] The Board read the Act as we read it. The ruling of the Director may be resorted to for guidance. See *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140; *Mabee* v. *White Plains Pub. Co.,* 327 U. S. 178. But his rulings are not made in adversary proceedings and are not entitled to the weight which is accorded interpretations by administrative agencies entrusted with the responsibility of making *inter partes* decisions. *Skidmore* v. *Swift & Co., supra,* p. 139. The history and language of the Act would need be far less clear for us to give his rulings persuasive weight. Moreover, as the Circuit Court of Appeals pointed out, the contrariety of administrative rulings [17] lends less credence to the contention that Congress by the amendment in 1944 and the extension in 1945 showed a preference for one over the other. In view of the language of the Act and the nature of the

---

[14] Executive Order 8545, September 23, 1940, 5 Fed. Reg. 3779.

[15] Local Board Memorandum 190–A, May 20, 1944, Part IV, § 1 (C).

[16] See *Scovill Mfg. Co.,* 21 War Labor Rep. 200, 201, 202.

[17] See Note 54 Yale L. Journ. 417.

administrative findings, we would want explicit indication by Congress that it chose the Director's interpretation before we concluded that Congress had adopted it.

*Affirmed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Black, dissenting.

I believe we should reverse the judgment of the Circuit Court of Appeals and remand the cause to it with directions to dismiss the appeal for want of jurisdiction because the Union was not a proper party to appeal. The money judgment was in favor of Fishgold and against the Sullivan Dry Dock and Repair Company. Had the Company paid the judgment, I see no way in which the Union would have been "aggrieved." The only reason advanced by the Court for holding that the Union was "aggrieved" is that, had the District Court judgment remained on the books, the judicially formulated doctrine of *res judicata* would have barred the Union in any future proceedings from challenging the District Court's application of the federal statute to the particular collective bargaining agreement. A fair application of *res judicata* bars a party in a second litigation only if that proceeding involves the same issues as the first litigation between the same adverse parties or privies. This means that *res judicata* could bar the Union only in a new proceeding between it and Fishgold or his privies. But there is no possibility of such litigation since the seniority right which the District Court held Fishgold had under the statute had under its provisions expired by the time the Union appealed. *Res judicata* would not have barred the Union in a proceeding between it and any other party, since no other party was

a party adverse to the Union in the present suit. And this includes any possible proceeding between the Union and the Sullivan Dry Dock Company since that Company, though a party, was not an adverse party in the trial court. None of the cases cited by the Court's opinion support the proposition that a party is bound in a future litigation against a party that was not an adverse party, but on the same side, in the earlier litigation. Nor do these cases, or any other decision of this Court of which I am aware, formulate as the rule of this Court the harsh doctrine of collateral estoppel, adopted in a few state jurisdictions, which always bars a losing party, so long as the issue is the same, even though the later litigation involves different adverse parties. It is unlikely that this harsh doctrine, never adopted by this Court, would in the future have been applied to bar the Union in any further proceedings involving interpretation of the scope of its collective bargaining agreement in the light of the federal statute. In my opinion the Union would not have been barred by the trial court's judgment. It was therefore not an aggrieved party and not entitled to appeal.

The result of permitting parties not adversely affected to appeal a judgment is to impose burdens upon litigants actually interested when those litigants may themselves be fully satisfied with the judgment. The scope of *res judicata* should not be extended to produce such a result. This case illustrates the wisdom of the practice which permits parties to settle their own lawsuits without intervention by others interested only in precedents. *Boston Tow Boat Co.* v. *United States,* 321 U. S. 632.