GAUWEILER v. ELASTIC STOP NUT CORPORATION OF AMERICA (LOCAL NO. 726, INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O., Intervener).

No. 9253.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 7, 1947.

Decided May 20, 1947.

Abraham L. Friedman, of Newark, N. J. (Rothbard, Harris & Oxfeld, Samuel L. Rothbard, and Emil Oxfeld, all of Newark, N.J., on the brief), for appellant.

Whittemore, Porter & Pollis, of Elizabeth, N. J. (Hamilton Hicks, of New York City, Phidias L. Pollis, of Elizabeth, N. J., and Frederic P. Weller, of New York City, on the brief), for respondent.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J. (Edward V. Ryan, Asst. U. S. Atty., of Newark, N. J., on the brief), for petitioner-appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This litigation presents a new phase of the problem of veterans' rights under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., of which the relevant amended portion of section 8 is cited in the margin.[1]   The follow-

McLAUGHLIN, Circuit Judge, dissenting.

---

[1] 54 Stat. 890, Sept. 16, 1940, as amended 58 Stat. 798, Dec. 8, 1944, 50 U.S.C.A. Appendix, § 308:

"Sec. 8(b) In the case of any person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, * * *

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *

"(c) Any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such service, and shall not be discharged from such position without cause within one year after such restoration."

ing set of facts will present the question involved.

A man is employed by a corporate employer. His employment is interrupted by his call for service in the armed forces. He qualifies and is inducted into the army. During his absence a new contract is negotiated by the employer and the union which is the authorized bargaining agent for employees in the plant. Under the terms of the new agreement, the seniority provisions which existed earlier are modified so that certain union officials become entitled to a higher seniority than anyone else. In course of time our employee returns from his tour of duty, and is discharged under circumstances which fulfil all the qualifications to give him the benefits of the statute. He resumes his former employment. A lay-off occurs due to slackening of work in the plant. Following the provisions of the contract, the company lays off the returned veteran before laying off union officials who, under the contract, have seniority superior to the veteran, but who, in point of service, are junior to him. Has the veteran a claim against his employer for violation of the provisions of the statute?

We have, to aid us, two Supreme Court decisions: Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and Trailmobile Co. v. Whirls, 67 S.Ct. 982. To these should be added the very able discussion of the Fishgold case by the Circuit Court of Appeals, 2 Cir., 1946, 154 F.2d 785. Neither case is directly in point. The Fishgold decision dealt with the question whether the veteran had, by virtue of the statute, acquired a super seniority over all non-veteran employees of the plant. The Trailmobile case was concerned only with the duration of the veteran's restored seniority standing. This Court, therefore, must decide the new question as best it can without precedent on which to lean for help.

We do have, however, from the majority opinion in the Fishgold case what seems to us a pretty clear statement of the Supreme Court's view of the purpose and effect of the Act. While we quite realize the danger of pulling a judicial statement out of its context to support a conclusion on a question not directly before the Court, we think the repeated expressions of view in the Fishgold opinion give us something far more than a single casual dictum possibly could. We quote from the opinion therefore upon the question of what the Supreme Court considered the returning veteran's rights to be with regard to his position in former employment.

The Court said: "* * * he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." 328 U.S. at pages 284, 285, 66 S.Ct. at page 1111. "* * * He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services." 328 U.S. at page 285, 66 S.Ct. at page 1111. "* * * by these provisions Congress made the restoration as nearly a complete substitute for the original job as possible. * * * Congress protected the veteran against loss of ground or demotion on his return." (328 U.S. at page 286, 66 S.Ct. at page 1111) "Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems and to protect him against loss under them by reason of his absence. There is indeed no suggestion that Congress sought to sweep aside the seniority system. What it undertook to do was to give the veteran protection within the framework of the seniority system plus a guarantee against demotion or termination of the employment relationship without cause for a year." (328 U.S. at page 288, 66 S.Ct. at page 1113).

This same concept of veterans' rights was repeated, and approved by strong implication, in the language of the majority opinion in the Trailmobile decision. "The Fishgold case," says the Court, "held that under the Act a veteran is entitled to be restored to his former position plus seniority which would have accumulated but for his induction into the armed forces." 67 S.Ct. at page 983. And, again, "He [the veteran] was to be restored and kept, for

the year at least, in the same situation as if he had not gone to war but had remained continuously employed or had been 'on furlough or leave of absence' ". 67 S.Ct. 991.

All this means, we think, that what the Act gives to the veteran is the right not to lose his position or seniority by virtue of his absence in military or naval service. He is protected, while away, to the same extent as if he had been either continuously on the job in the plant or away on furlough or leave of absence for some personal reason.

Let us consider briefly what our employee's seniority rights would have been, had he remained continuously employed in the plant, without having been called away to war service. He would, of course, have had his rights fixed as to seniority, working conditions, pay, and all the rest, by terms of the contract entered into between the recognized bargaining agent and the employer.[2] Furthermore, the terms of such contract would have been the measure of his rights whether he was, himself, a member of the bargaining union or not. That is one of the incidents which results from the collective bargaining practice carried on by the bargaining agent designated by the majority and is indeed no more than the application in the industrial world of what we all experience in the world of public affairs.

In entering into labor contracts, the bargainers must make their agreements with a view to the rights of the entire group bound by them, and not enter into agreements which discriminate against one part for the benefit of another.[3] The provision for top or preferred seniority for union officers and other officials is neither uncommon nor arbitrary.[4] It may add a pleasant emolument to a particular union office, but it also provides what union members may well consider a highly essential matter: that is to have their own representatives on the job to look after their interests, so long as work is being done in the plant.

It is to be emphasized that in our case there is no suggestion of discrimination against veteran-employees. The significance of that point was mentioned by the Supreme Court in the Trailmobile case, 67 S.Ct. 982 at page 991. Discrimination would, obviously, change the whole picture. If, during the absence of some of the employees at war, those remaining got together and created union offices for themselves so that everyone had an office, and then proceeded to provide top seniority for union officers, a court would have no trouble in seeing that this device was simply an effort to discriminate against absentee fighting men. No such point is involved in the problem before us.

The considerations above stated bring us to the conclusion that the employee absent in war service is bound by the non-discriminatory arrangements made between the bargaining unit and the employer during his absence. This fits precisely with the concept of rights under the statute

---

[2] 1 Teller, Labor Disputes and Collective Bargaining § 154, p. 476 (1940) and 1946 Supplement 91: " * * * [A collective bargaining agreement] may be broadly defined as an agreement between a single employer or an association of employers on the one hand and a labor union upon the other, which regulates the terms and conditions of employment. * * *" (Vol. 1, p. 476)

[3] See: Christenson, Seniority Rights under Labor Union Working Agreements, 11 Temp.L.Q. 355 (1937) at 370, 371; and Comment, 47 Yale L.J. 73 (1937) at 90.

[4] Droste v. Nash-Kelvinator Corp., D. C., 1946, 64 F.Supp. 716 at page 721: " * * * It is not unusual to provide in labor contracts that certain employees shall head the seniority list. This provi-

sion in labor contracts must have been well known to the members of Congress, and the same type of provision for Veterans of World War II could have been specifically inserted in the Act had Congress intended the Act so to provide." For an example of this practice see the 1946 collective bargaining agreement between the General Motors Corporation and the local C. I. O. union set out in 1 CCH Labor Law Service at paragraph 612. On page 617 there is the following: "(21c) When there is a reduction in force the committeemen and alternate committeemen will be retained at work regardless of seniority in their regular occupational group on their own jobs or if their jobs are not operating they will be placed on other jobs that are operating in their respective districts if they can do the work."

enunciated by the Supreme Court in Fishgold and reiterated in Trailmobile. The veteran does not lose by his absence. He simply remains as if he were on the job and subject to the well established and accepted routine of collective bargaining, so far as this particular right of seniority is concerned.[5] That, is all we are passing on in this case.

This result is, we think, the only practical one from the standpoint of both plant operation and collective bargaining.[6] If our veteran could displace a junior union officer, he, himself, could be displaced by a senior non-veteran. The result would be that neither union officer nor veteran was on the job and the desire of neither the union nor the veteran would be satisfied.

■ The facts of Gauweiler's case fit precisely with the discussion above. He entered employment April 1, 1941. He was inducted into the navy October 9, 1943. The contract containing the provisions giving union officers preferred seniority came June 19, 1944. Gauweiler was discharged from service and was re-employed by the company on December 18, 1945. His re-employment was in his former position. On January 18, 1946, Carl Matthes, section steward, junior in service to Gauweiler, but senior under the contract, was laid off. On March 1 Gauweiler was laid off. Then on March 21, following an arbitration, Matthes was restored as provided by the contract. Gauweiler claims that he should have been put back to work instead of Matthes and sues the employer for wages lost as well as asking for a judicial declaration that he is entitled to reinstatement. The Union, during the period when the operative facts occurred, was the recognized bargaining agent in the plant and according to the undisputed testimony was certified as such by the National Labor Relations Board. The discussion above completely covers the Gauweiler case. We conclude that the learned District Judge was incorrect in awarding damages to the plaintiff.

This view of the case makes it unnecessary to consider several other points raised

---

[5] It is to be noted that the "seniority systems and seniority rights" as recognized by Congress, according to Mr. Justice Douglas in the Fishgold case (328 U.S. 275, at page 288, 66 S.Ct. 1105, 1113, 90 L.Ed. 1230, 167 A.L.R. 110), exist only because of statute or contract. See: Trailmobile Co. v. Whirls, 67 S.Ct. 982 at page 988, footnote 21; Christenson, Seniority Rights under Labor Union Working Agreements, 11 Temp.L.Q. 355 (1937); Comment, Seniority Rights in Labor Relations, 47 Yale L.J. 73 (1937). An employees' seniority is to be measured, therefore, by the statute or contract which creates the right. In the instant case the District Court had to decide just what under the Selective Training and Service Act, was the "like seniority" of a veteran in relation to the effective collective bargaining contract in existence at the time of the veteran-employee's lay-off and not any contract that might have been operative at the time of his departure for service. The only seniority system functioning in the employer's plant, at the time of the veteran-employee's lay-off was that described in the June 19, 1944 contract. This contract contained the "top-seniority" provision. The only problem remaining for the court was to find where the veteran-employee belonged under the seniority classification of this contract. It is not persuasive to argue that Congress intended to change such a fundamental matter of industrial relationships as to the operation of recognized seniority systems. It was to provide for such situations as arose here that Congress used the language " * * * restore * * * to * * * like seniority * * * unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *." (Emphasis Added) See statute in footnote 1, supra.

[6] For comments regarding the industrial significance of the Trailmobile and Fishgold cases see: 46 Col.L.Rev. 1030 (1946), a critical discussion adversely commenting upon the Circuit Court opinion in the Trailmobile case, 6 Cir.1946, 154 F.2d 866, wherein the conflict regarding veteran and labor developments is sharply noted; and 21 Tulane L.Rev. 109 (1946), directing attention to the impact of the Fishgold case upon industrial relations remarks at page 112: " * * * Thus, the Supreme Court in the instant case has announced a final solution to this controversial question, and reached a view consistent with the analogous British and Canadian statutes. It is submitted that the instant case points towards a sound policy in curtailing the liberality of construction of legislation relative to veterans where such liberality would jeopardize a fundamental rule of industrial relations which has been relied upon so heavily by both labor and management."

by the intervening union and which are relied upon to show that the decision of the District Court was incorrect, including the admissibility, scope or effect of the arbitrator's award.

The judgment is reversed.

McLAUGHLIN, Circuit Judge (dissenting).

The question before us is whether under Section 8 of the Selective Service and Training Act a returning veteran employee has the right to displace a nonveteran union official of less service seniority who claims actual seniority because of an employment contract entered into between the union and the employer while the veteran was in the Navy. I think this question has been answered in the affirmative by the Supreme Court in Trailmobile Co. v. Whirls, 67 S.Ct. 982. That case not only followed and approved Fishgold v. Sullivan Drydock and Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, but it expressly interpreted the language of the latter decision which is quoted by the majority here as favoring its view. Speaking of the veteran in the Fishgold litigation, Mr. Justice Rutledge for the Court in Trailmobile said at page 991 of 67 S.Ct.:

"He was to be restored and kept, for the year at least, in the same situation as if he had not gone to war but had remained continuously employed or had been 'on furlough or leave of absence.' It is clear, of course, that this *statutory addition to the veteran's seniority status* is not automatically deducted from it at the end of his first year of reemployment. But the Fishgold decision also ruled expressly that he was not to gain advantage beyond such restoration, by virtue of the Act's provisions, so as to acquire 'an increase in seniority over what he would have had if he had never entered the armed services. * * * No step-up or gain in priority can be fairly implied.' 328 U.S. at pages 285, 286, 66 S.Ct. at page 1111.

*"For the statutory year indeed this meant that the restored rights could not be altered adversely by the usual processes of collective bargaining or of the employer's administration of general business policy. But* if this extraordinary statutory security were to be extended beyond the statutory year, the restored veteran would acquire not simply equality with nonveteran employees having identical status as of the time he returned to work. He would acquire indefinite statutory priority over nonveteran employees, a preferred status which we think not only inharmonious with the basic *Fishgold* rationalization, but beyond the protection contemplated by Congress." (Emphasis added.)

The Fishgold decision itself just as precisely eliminates the employment agreement seniority from the present matter when it says at page 285 of 328 U.S., at page 1111 of 66 S.Ct.:

"And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act."

It cannot be too strongly stressed that we are dealing with the "extraordinary statutory security" given the veteran for the preservation of his seniority and that there is nothing in the Act permitting that seniority to be reduced by any sort of changed circumstances within the statutory year. Section 8(b) (B) reads:

"If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *"

I think it abundantly clear that in the above language the changed circumstances provision relates solely to restoration of the "position" and does not apply to "seniority" and that construing the section, as does the majority opinion, to mean restoration to "like seniority" is directly contrary to the plain import of that language. The Elastic Stop Nut employment contract is within "the usual processes of collective bargaining" and if its seniority provisions as to union officials were upheld against the veteran it would alter adversely the latter's restored rights. Gauweiler, therefore, away in the Navy when the contract was entered into and hence under the protection of the

454

statute is not bound by that contract's pertinent seniority terms.[1]

Statements as to what Gauweiler's seniority rights would have been had he remained in his employment cannot be other than futile speculation and are in any event irrelevant, for the statute and the cases construing it tell us not what Gauweiler's status might have been if he had continued his civilian occupation but what he was entitled to as a returned veteran. It is also suggested that, if the veteran by his seniority displaces a union official, then the veteran in turn would be supplanted by a senior nonveteran. Such supposition is not in this case. Its appearance would seem to depend on various factors not present as, for example, the status, rank and wishes of the personnel involved and whether nonveteran employees would be estopped under their employment contract. Here we are dealing with a particular reemployment question on its own facts where the veteran has been deliberately given "a special statutory standing" by legislation which "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." Fishgold v. Sullivan Corporation at page 285 of 328 U.S., 66 S.Ct. 1111, 90 L.Ed. 1230, 167 A.L.R. 110.

[1] There is an arbitration question in this case which quite properly under the circumstances is not discussed in the majority opinion. Proof of arbitration of a grievance concerning the job in question between the nonveteran claimant and the employer was rejected by the Trial Court because Gauweiler was not a party thereto. The issues in that arbitration were obviously different from those in the case at bar. Nor was it a class action as the claimant's position was utterly opposed to that of Gauweiler. Finally, if the above interpretation of the statute is correct, an award by the arbitrator in favor of the nonveteran would be contrary to Section 8(b) (B).