DI MAGGIO v. ELASTIC STOP NUT CORPORATION OF AMERICA (INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL WORKERS OF AMERICA, C.I.O., LOCAL NO. 726, Intervener).

No. 9271.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 7, 1947.

Decided May 20, 1947.

McLAUGHLIN, Circuit Judge, dissenting.

———◆———

---

Abraham L. Friedman, of Newark, N. J. (Rothbard, Harris & Oxfeld, Samuel L. Rothbard, and Emil Oxfeld, all of Newark, N. J., on the brief), for appellant.

Edw. V. Ryan, Asst. U. S. Atty., of Newark N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Hamilton Hicks, of New York City, and Whittemore, Porter & Pollis, of Elizabeth, N. J. (Phidias L. Pollis, of Elizabeth, N. J., and Frederic P. Weller, of New York City, on the brief), for respondent.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case presents the same general question as that involved in the Gauweiler and Koury litigations, 3 Cir., 162 F.2d 448, decided this day. The facts may be briefly summarized and from this summary the relevancy of the rule announced in the two decisions just mentioned will be apparent.

Petitioner was first employed by the respondent on June 9, 1941. On April 30, 1943 he was inducted into the army. The job he left was the job of set-up man in the counter-sinking and hand tapping department. On June 19, 1944, employer and union entered into a bargaining agreement by which certain union officers had top seniority. This is the same agreement mentioned in the Gauweiler and Koury cases. Di Maggio was honorably discharged December 10, 1945, and subsequently went back into the company's employ to work in his former position. In putting Di Maggio to work as a set-up man his employer displaced an employee named Yorke who was a section steward and who, under the contract, had seniority over Di Maggio. The union brought the matter of Yorke's rights under the contract to arbitration as provided for in the labor agreement and the arbitrator's award was that York was entitled to reinstatment with back pay. The company obeyed the order of the arbitrator and found other work for Di Maggio.

Like Koury, Di Maggio joined the union following his return from service and, again like Koury, filed his petition a few days after the consummation of the 1946 contract between union and employer on June 13, 1946. It is to be noted that Di Maggio does not complain that he was either discharged or laid off. Like Koury, his claim is to be restored to his former position with payment for the difference between the pay carried by that position and that given him by the other jobs to which he has been assigned since his return. The District Court awarded him the relief prayed for.

What we have said in the Gauweiler and Koury cases disposes of the present litigation without further discussion. There is the additional fact to be noted here that it appears both in the pleading and by the testimony that there were, at the time of the litigation, other employees of the company with seniority, by actual length of service, greater than that of Di Maggio. In that event it is quite clear that Di Maggio was not entitled to displace such employees because, even at the time of this litigation, it had been made clear that the veteran does not per se become entitled to super seniority. And this situation, we think, shows again that the solution to the problem given in the Gauweiler case is the one which will bring the matter out with fairness to the veteran and avoid confusion to the employer. If the respondent must pay Di Maggio on the basis of the wages attached to his former position from the time of his return, must it not, also, under its contract, pay the same wages to the other employees who out-rank Di Maggio in seniority? It has already been compelled to do so with regard to the union section steward and we see no escape for it under the contract so far as others senior to Di Maggio are concerned. This, we think, is very hard on the employer as well as an interference with the usual process of collective bargaining and a source of confusion as to the rights of one veteran over another.

The judgment is reversed and the case is remanded to the District Court for proceedings not inconsistent with this opinion.

BIGGS, Circuit Judge (concurring).

Section 8(b) (B) of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 308(b) (B), commands that the veteran be restored to the position which he occupied when he left civilian life "or to a position of like seniority, status and pay * * *." Examination of the statute and an estimation of the results which Congress intended to achieve make it apparent, I believe, that a literal interpretation of the quoted words is an impossibility. At first impression it would seem easy to give the veteran seniority, status, and pay "like" that which he had. For example, to award him pay like that which he had would seem to require only simple arithmetic and the fixing of his status and seniority apparently should entail no greater effort. "Seniority" is a rule fixing an employment service period and "status" is no more than the condition of an individual's right to employment. It appears from the decision of the Supreme Court in the Trailmobile Co. case, 67 S.Ct. 982, that the bundle of rights represented by "seniority, status, and pay" are not severable.

The seeming facility with which the results apparently required by the face of the statute may be achieved vanishes on consideration of the facts of the instant case and what would occur here if the statute were applied literally. The circumstances of the case at bar demonstrate the difficulties inherent in resolving a case where a veteran seeks reemployment, where there are a large number of employees, and where there are existing collective bargaining agreements providing seniorities for designated union officials and for other personnel. Under the decision of the court below and under the interpretation contended for by the veteran, Di Maggio, he will displace the union official (Yorke) ·given seniority under the collective bargaining agreement.

Then, under the decision of the Supreme Court in the Fishgold case, the veteran will be displaced by one of two non-veterans (Nyulazy or Polewchak) both of whom have greater seniority than the veteran. Nyulazy or Polewchak in turn will be displaced by the union official (Yorke) under the collective bargaining agreement who will again be ousted by Di Maggio. This process must be repeated ad infinitium. The result will not be a workable system of seniority but a merry-go-round infinitely destructive to industrial peace. Two or three or more systems of priority will be in effect at one time in a single plant. This is an industrial impossibility, working a result which Congress could not possibly have intended. Under the "escalator" doctrine set up by the Supreme Court in the Fishgold case, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, every veteran is to be fitted into a single seniority system which must be held to be binding on him and on all veterans unless it discriminates against veterans per se. The reason of Section 8(b) must prevail over its exact letter. United States v. Kirby, 7 Wall. 482, 74 U.S. 482-486, 19 L.Ed. 278.

For these reasons I concur in the views expressed in the majority opinions filed respectively in the case at bar and in Gauweiler at No. 9253, 3 Cir., 162 F.2d 448 and in Koury at No. 9272, 3 Cir., 162 F.2d 544 as well.

McLAUGHLIN, Circuit Judge (dissenting).

This case, companion to the Gauweiler and Koury appeals decided today, 162 F.2d 448, 544, is disposed of by the majority opinion on the basis of the decisions in those two cases.[1] I agree with the majority that the Gauweiler case is more suitable for the clear and fair presentation of the main question involved because of the absence from that matter of more or less confusing collateral factors which appear here and in the Koury litigation. I dissent from the majority holding in this case for the

[1] There is in this case also evidence of arbitration of a grievance by a nonveteran claimant with union seniority against the employer for the position of set up man, the sort of job in question here. As in the Gauweiler and Koury suits this veteran was not a party to the grievance or to the arbitration. The circumstance that he may have been present at the arbitration hearing does not in any substantive way differentiate this situation from the Gauweiler and Koury facts.

reasons expressed in my dissents in Gauweiler v. Elastic Stop Nut Corporation of America and in Koury v. Electric Stop Nut Corporation of America.