OIL WORKERS INTERNATIONAL UNION CIO v. SINCLAIR REFINING CO. et al.

No. 12317.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1948.

Lindsay P. Walden, of Fort Worth, Tex., and Robert C. Eckhardt, of Dallas, Tex., for appellant.

Nat J. Harben, Alfred McKnight, Sloan Blair, Frank B. Potter, U. S. Atty. and O. Morris Harrell, Asst. U. S. Atty., all of Fort Worth, Tex., for appellees.

Before HOLMES, WALLER and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This action was instituted in the court below by Roscoe Williams against the Sinclair Refining Company, praying for an injunction to require the defendant to restore him to the position of stock-gauger, which he claimed to be entitled to by reason of his seniority. The defendant filed its answer, and also a third-party complaint under which R. K. Bateman and the appellant were brought in as third-party defendants. In an amended complaint, Williams asked for a money judgment for the difference between the wages that he received and what would have been payable to him but for the alleged unlawful action of the defendant.

After other pleadings were filed and oral evidence introduced, the court below delivered its opinion, filed findings of fact and conclusions of law, and entered judgment to the following effect:

It was ordered that the plaintiff, Williams, have and recover the sum of $130.87 with interest and costs from the Sinclair Refining Company, and that the latter have judgment over against Oil Workers International Union, C.I.O., for a like amount. It was further ordered that Sinclair Refining Company take nothing against R. K. Bateman, and that the action be dismissed as to all other parties defendant. It was stated in argument that Sinclair satisfied Williams' judgment against it by payment thereof, but there is nothing in the record as to such payment. Nevertheless, no one appealed from the judgment except Oil Workers International Union, and the latter's liability to Sinclair is the only question directly before us on this appeal. The court below found the facts substantially as follows:

Williams was a permanent employee of Sinclair, and left his position to perform training and service in the United States Naval forces. After his return, he learned that the job here involved became open during his absence, and made demand for it. Sinclair recognized Williams' right, but did not immediately place him upon the job, due to the fact that another employee with greater seniority, then absent in military service, had not returned. Later, the employee last referred to did return, and advised Sinclair that he did not desire to continue in its employment. Sinclair immediately gave Williams the job, displacing Bateman. Thereafter, Bateman and the Union filed with Sinclair a grievance under the terms of the bargaining contract. The grievance was disallowed, and the Union demanded an arbitration under the terms of said contract. The arbitrators held that Bateman was wrongfully displaced, and Williams wrongfully given the former's job; later, Bateman voluntarily resigned the position, and Sinclair immediately restored Williams to it.

The court below in its oral opinion said that Williams would have been restored to his "position and seniority" but for the intervention of the Union, and thereupon entered judgment over against appellant. We think the question is not whether the intervention of the Union caused Williams to lose his job, but whether the Union committed an actionable wrong by insisting upon the displacement of Williams. Putting other questions aside, if Williams was claiming more than he would have been entitled to if he had never entered the armed services, then the appellant did Williams no legal wrong. The

position to which Williams was entitled was the one that "he left plus cumulated seniority." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 287, 66 S. Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

■ It is undisputed that Williams had been in the employ of the company longer than Bateman, and therefore had greater plant seniority; but Bateman had worked longer in the light and oil department. In fact, it appears that Williams had never worked in the light and oil department prior to his transfer to that department on April 8, 1946, the date that Bateman was displaced. After being demoted so as to permit Williams to be promoted, Bateman requested that he be given his old job in the storehouse department, but was told that this could not be done because the position he formerly held in that department had been abolished. Upon the hearing by the arbitrators, the employer agreed that, in the absence of veterans' rights, departmental seniority takes precedence over plant seniority in the matter of job rights, and further admitted that "had Williams not been a veteran he could not have bumped Bateman." This being true, we think there is no sound basis under the Selective Training & Service Act, 50 U.S.C.A.Appendix, § 301 et seq., for the contention that Williams was entitled to displace Bateman.

Turning to the contract between the employer and appellant, we find that an employee, absent for military service, retains and continues to accumulate his seniority as if he were actually working for the employer, and is entitled to reemployment on the basis of seniority so accumulated at the time of his honorable discharge. The practical effect of this is that Williams, upon his return and reemployment, was entitled to such seniority as would have been his if he had remained on his job and not entered the service, or had been away on a furlough or on leave of absence.

Conceding, without deciding, that upon his return Williams should have been permitted to exercise a job-rejection right, which he might have exercised if he had not been absent for military service, he was not entitled to exercise it to displace Bateman in this instance. There is another factor to be considered. The position vacant on November 4, 1944, which Williams by his seniority would have had the first opportunity to accept or reject, was that of pumper-gauger. The position from which Bateman was demoted on April 8, 1946, was not this one but evidently one further along in the line of progression. We agree with the arbitrators that it would take a strained construction of the law and the contract to entitle the returned veteran to exercise his option on a job one step removed from the one on which he was denied the opportunity to exercise his option by reason of his absence for military service.[1] Our conclusion is that the decision of the arbitrators was correct, and was not in conflict with Section 8 of the Selective Training & Service Act, 54 Stat. 885, 50 U.S.C.A.Appendix, § 301.[2]

Other grounds of reversal are urged by appellant, but we do not discuss them since a decision as to them favorable to appellant would lead to the same conclusion. The judgment appealed from, so far as it is against the appellant, is reversed, and the cause remanded with instructions to dismiss the third-party complaint.

[1] Fishgold v. Sullivan Drydock & Repair Corp., 325 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S. Ct. 892, 91 L.Ed. 1328.

[2] Hewitt v. System Federation, 7 Cir., 161 F.2d 545; Feore v. North Shore Bus Co., 2 Cir., 161 F.2d 552; Gauweiller v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 448; Di Maggio v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 546; Spearmon v. Thompson, 8 Cir., 167 F.2d 626; Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466; Maloney v. Chicago, B. & Q. R. Co., D.C., 72 F.Supp. 124; Kent v. Todd Houston Shipbuilding Corp., D.C., 72 F.Supp. 506; Harrison v. Seaboard Air Line R. Co., D.C., 77 F.Supp. 511.