**CARR v. NEW YORK SHIPBUILDING CORP.**

Civ. No. 72.

United States District Court
D. New Jersey.

Aug. 7, 1952.

Grover C. Richman, Jr., U. S. Atty., Camden, Alexander Feinberg, Asst. U. S. Atty., Camden, for petitioner.

George D. Rothermel, Camden, for respondent.

MADDEN, District Judge.

·This is a proceeding instituted by petitioner, Anthony Carr, against his employer, the New York Shipbuilding Corporation, seeking to establish his seniority rights in his position under the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq. The matter was tried by the Court without a jury. Memo has been filed.

The facts are not in serious dispute and are found to be as follows: Carr was first employed by respondent on December 4, 1939 as an apprentice-loftsman and continued in the employ of respondent in various capacities until February 16, 1945, when he left to enter the Armed Forces of the United States. At that time he was a Loftsman-Second Class.

It is almost unnecessary to mention that respondent operates one of the largest shipbuilding yards in this country if not in the world and, naturally, was tremendously busy building ships, both naval and merchant marine, during World War II. Its employment rolls are as follows:

| Date | Total Employees |
|------|-----------------|
| 5/1/36 | 4,914 |
| 5/1/40 | 7,962 |
| 5/1/41 | 12,434 |
| 5/1/42 | 22,002 |
| 5/1/43 | 32,291 |
| 5/1/44 | 27,432 |
| 5/1/45 | 24,446 |
| 5/1/46 | 14,453 |

On July 12, 1945, because the Government was by then cancelling and cutting back war time contracts, there was a lay-off in the Department wherein petitioner was employed. At this time petitioner was still in the Armed Forces, but his employment record was marked showing a lay-off as of that date, July 12, 1945.

In September, 1946 petitioner was released from the Army on terminal leave with an honorable discharge effective November 27, 1946. Somewhere around the end of September or October 1, 1946 (within the time provided by the Act) petitioner applied to respondent for reinstatement to his position. Petitioner was not reemployed and was advised that there was no work available to him in his classification but that his name would be placed on the available list, and he would be notified when work became available according to his seniority.

On March 14, 1949, petitioner was reemployed by respondent as a Loftsman-Second Class (having been employed elsewhere in the meantime) and he has continued to be employed by respondent up to the time of trial.

The sole matter at issue is the seniority status of petitioner, he alleging that his seniority runs from the time of his original employment, December 4, 1939. Respondent contests this alleging that the seniority rights of petitioner as established by the various collective bargaining contracts negotiated between the respondent and the workers union commenced on the date of his rehiring on March 14, 1949.

Section 5, Article 8 of the collective bargaining agreement effective as of the date of employment of petitioner (defining and regulating seniority) provided that any employee who on or after October 3, 1938 had been discharged or had quit when needed or who due to lay-off or lack of work had been absent from respondent's employment for a period exceeding one year should lose his seniority standing; if and when reemployed thereafter his length of service should be calculated from the date of his reemployment.

This provision of Section 5 was changed in the agreement effective June 23, 1941; under this change an employee who was laid off for lack of work had to be absent from respondent's employment for a period exceeding two years before he lost his seniority standing. This requirement was continued in subsequent agreements until the agreement which terminated at 8:00 a. m. June 23, 1947. On that date, respondent and the Union were unable to agree, and a strike occurred. An agreement was ne-

gotiated, effective 7:30 a. m. on September 22, 1947, which continued in force until June 23, 1948 at midnight. The agreement of September 22, 1947 provided that an employee who was laid off after October 3, 1938 because of lack of work and because of such lay-off was absent from respondent's employment for a continuous period exceeding one year lost his seniority standing; when reemployed thereafter his length of service was to be calculated from the date of his reemployment; but that an employee who was first employed by respondent prior to October 3, 1938 should not lose his seniority standing unless and until he had been absent from respondent's employment for a continuous period of two years due to lay-off because of lack of work.

The collective bargaining agreement of September 22, 1947 terminated under Article 30 thereof at midnight on June 23, 1948. On that date the terms were extended by mutual agreement of the parties while negotiating a new agreement; by letter of agreement dated August 31, 1948, said agreement was extended until midnight, June 23, 1950. Under the letter of agreement dated August 31, 1948, a change was made in the seniority provisions referred to above in that the new agreement provided that an employee who was laid off after October 3, 1940 because of lack of work and because of such lay-off was absent from respondent's employment for a continuous period exceeding one year lost his seniority standing, and when reemployed his length of service was to be calculated from the date of his reemployment; but that any employee who was first employed by respondent prior to October 3, 1940 should not lose his seniority standing unless and until he had been absent from respondent's employment for a continuous period of three years due to lay-off because of lack of work.

Under the best interpretation of these clauses the petitioner would retain his seniority rights for a period of three years after his lay-off because of lack of work. This occurred even though he was absent in the Armed Forces on July 12, 1945, and he was not rehired until subsequent to the

three year period, i. e. March 14, 1949. There is no proof or allegation that respondent was in a position to rehire petitioner before the expiration of the three year period. The only question is, can the lay-off of July 12, 1945 take effect legally while petitioner was in the Armed Forces, as against him? This Court concludes that it can and did.

The Statute, 50 U.S.C.A.Appendix, § 308, provides among other things, as follows:

"(B) .if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay *unless the employer's circumstances have so changed as to make it impossible or unreasonable to do. so*". (Emphasis supplied.)

The question of reemploying returning veterans in the face of bargaining agreements has been before the Courts on numerous occasions, and it is unnecessary to here cite the long list of cases which establish the point that Congress when it enacted this legislation in aid of the veteran kept in mind the relation that exists between the employer and the collective bargaining agent, and the necessity in this industrial country of maintaining, if possible, or at least not disrupting, such harmonious relations that may exist, and that the rights of such returning veteran must fit into such a picture.

For example, the United States Supreme Court said in Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, at page 284, 66 S.Ct. 1105, 1111, 90 L. Ed. 1230, speaking of seniority rights:

"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

And further:

"The slackening of work which causes him to be laid off by operation of a seniority system is neither a removal or dismissal or discharge from the 'position' in any normal sense."

And in a matter wherein this particular Court was reversed by the Court of Appeals for the Third Circuit, in Gauweiler v. Elastic Stop Nut Corporation, 162 F.2d 448, at page 451, Judge Goodrich said:

"All this means, we think, that what the Act gives to the veteran is the right not to lose his position or seniority by virtue of his absence in military or naval service. *He is protected, while away, to the same extent as if he had been either continuously on the job in the plant* or away on furlough or leave of absence for some personal reason." (Emphasis supplied.)

Here the company did not consider the petitioner's employment severed when he entered the service but not until the condition of the company so changed that he if he had "been· continuously on the job" would have been laid off on July 12, 1945 and his employment record was so marked. Conditions of work did not warrant his rehiring until more than three years thereafter, to wit—March 14, 1949. By the most favorable interpretation of the provisions of the bargaining agreement, which the Court finds valid and binding on respondent, petitioner's seniority rights expired on July 12, 1948. His seniority started anew when he was rehired March 14, 1949.

The petition will be dismissed. Prepare an order.