## RUESTERHOLTZ v. TITEFLEX, Inc.

No. 9459.

Circuit Court of Appeals, Third Circuit.

Submitted Dec. 19, 1947.

Decided Feb. 20, 1948.

Saul G. Schulter, of Harrison, N.J., and Lawrence Friedman, of Newark, N.J., for appellant.

William J. Brennan, Jr. and Pitney, Hardin, Ward & Brennan, all of Newark, N.J., for appellee.

Before BIGGS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The instant appeal raises questions concerning Section 8 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308.

At the time of his enlistment in the armed forces in 1943, petitioner was foreman of the shipping department of Plant No. 3, one of the 11 plants of respondent. Respondent was then employing more than 4,000 individuals, 122 of whom were engaged in shipping work. Petitioner was in charge of 35 men, who worked in three shifts. War materials constituted 98% of the total production of respondent.

Honorably discharged in May, 1946, petitioner applied for restoration about $2\frac{1}{2}$ months thereafter. Although the plant at which petitioner had been employed was closed, and although only the main plant was enjoying an appreciable degree of activity, he was nonetheless told that he was to report for work on July 29, 1946, as foreman of the shipping department at the main plant, at a salary of $60 per week.[1] Since the surrender of Japan, respondent had been operating on a considerably limited scale. Its shop personnel had dwindled to about 500, and the single remaining shipping department had been reduced to 15 men, who were on two shifts, the second one being "very light." During 1946, respondent had been "operating in the red."

On July 26, 1946, the employees of respondent went on strike; so that when petitioner reported for work on July 29, there was no work for him to do. On August 9, 1946, respondent by letter paid petitioner $60, which represented one week's pay, and indicated that it considered petitioner's employment to have terminated indefinitely.[2]

The strike ended on October 16, 1946. Employees were called back only gradually, so that on November 3 there were 181 employees, and at the beginning of Decem-

---

[1] This was $5 per week more than petitioner's salary at enlistment.

[2] The letter, inter alia, stated: "If, and when, operations are resumed on a scale requiring your services, we will contact you immediately,—and if you are not otherwise engaged shall be glad to re-engage you;" and it suggested to petitioner that he "take advantage of the Unemployment Compensation to which you have contributed."

ber about 225.[3] The shipping department personnel, consisting of six or seven men on one shift, had no foreman. Instead, one Ness, as "foreman of the level," apparently performed whatever supervision of shipping was still necessary.[4] At the time of petitioner's enlistment, Ness had been assistant superintendent. On July 20, 1946, Ness was the supervisor of the position to which petitioner was restored.[5] In the course of contraction of its activities, respondent had redesignated Ness as "foreman of the level," in which capacity he did the identical work which he had performed previously, i.e., supervision of shipping, receiving, and storage, but which change reduced his salary from $120 per week to $74 per week.

Meanwhile, on October 2, 1946, petitioner obtained elsewhere, and at the time of trial still held, a job which paid an average weekly salary of $45. Applying for reinstatement in November and December, 1946, he was advised that the position to which he had been restored in July no longer existed. Respondent offered him the only jobs available. None of these were comparable in status to the position he had held as shipping foreman, although in one of them "he would have gotten more money."

After a trial in which the foregoing testimony was adduced, the trial judge made the following finding of fact: "[Following the termination of the strike,] respondent, by reason of a further curtailment of its production, the adverse effect of the strike on its financial condition, and the uncertainty of its future, was unable to provide petitioner with employment in his former position or in a position of like seniority, status and pay. Respondent, nevertheless, offered petitioner employment in various other positions which were the best then available, but petitioner refused to accept any of these. * * * It is no longer necessary or economical to employ a foreman in the shipping department, and for this reason the position has been abolished." The court concluded that "it became impossible and unreasonable" for respondent to employ petitioner as a foreman after the strike ended, and that respondent fully complied with the statutory obligations by offering petitioner the best jobs then available. An order was entered in favor of respondent.

As the foregoing recital of facts indicates, the instant case is not one in which petitioner was denied restoration. Consequently, there was and is no necessity of deciding whether or not the circumstances of respondent had so changed as to render the restoration of petitioner impossible or unreasonable. Respondent eliminated this question by its timely reinstatement of petitioner to a position certainly comparable in seniority, status, and pay to that which he surrendered when he enlisted.

■ The issue, then, narrows down to whether petitioner was thereafter "discharged without cause." We shall assume arguendo that the letter of August 9 plus the offer of inferior positions was effectually a "discharge." See Fishgold v. Sullivan Drydock & Repair Corporation, 1946, 328 U.S. 275, at page 286, 66 S.Ct. 1105, at page 1111, 90 L.Ed. 1230, 167 A.L.R. 110. There being substantial evidence in the record to support the finding of the trial court that respondent was unable to continue petitioner's position because of the adverse economic conditions, we accept that finding. See Van Doren v. Van Doren Laundry Service, 3 Cir., 1947, 162 F.2d 1007, 1009. Petitioner is therefore compelled to resort to the argument that adverse economic conditions do not constitute a legitimate basis for discharge, and that the proper interpretation of the statutory provision is to permit discharge only when he has furnished cause. We believe this contention to be without merit.

In Trailmobile Co. v. Whirls, 331 U.S.

---

[3] The number of foremen in respondent's employ, decreased from 116 at the time of petitioner's enlistment to 20 on July 20, 1946, was further reduced to 6 when the strike ended. At the time of trial, there were 9.

[4] There was testimony that, for a period of three months after the strike, respondent had nothing to ship.

[5] The record does not indicate clearly whether or not Ness had also been petitioner's supervisor in 1943. Petitioner had been working for respondent since 1934, Ness since 1940.

40, at page 58, 67 S.Ct. 982, at page 991 the Supreme Court said, "The restored veteran * * * could not be disadvantaged by his service to the nation. He 'was not to be penalized on his return by reason of his absence from his civilian job.' [Fishgold v. Sullivan Drydock & Repair Corporation] 328 U.S. at page 284, 66 S.Ct. at page 1111. He was to be restored and kept, for the year at least, in the same situation as if he had not gone to war but had remained continuously employed or had been 'on furlough or leave of absence.'" Further, the court pointed out that the veteran, whose seniority had been adversely affected by a collective bargaining agreement in which he had had no voice, "was treated exactly as were other employees in his group having the same seniority and status as he had on the date of his reemployment. There was no discrimination against him as a veteran or otherwise than as a member of that group." 331 U.S. at page 59, 67 S.Ct. at page 991. See also Gauweiler v. Elastic Stop Nut Corporation, 3 Cir., 1947, 162 F.2d 448, 451.

Applying these principles to the case at bar, we note that the record is totally devoid of evidence or indication that discrimination was practised against petitioner either as a veteran or as an individual. While it is true that petitioner was employed before Ness was, petitioner could not claim prior right to Ness' position or any portion thereof, unless it were established that Ness was performing petitioner's job after the strike. Indeed, the evidence is uncontradicted that Ness would have been petitioner's superior if the strike had not occurred, and that Ness was performing the same duties before and after the strike. The trial court, therefore, was warranted in concluding that petitioner's job, like those of more than 200 others, had disappeared; and implicit in the findings of the lower court is it that reinstatement of petitioner after the strike would have resulted in a useless job. Cf. Kay v. General Cable Corporation, 3 Cir., 1944, 144 F.2d 653, at page 655. We are hardly inclined to assert that an employer is required to continue the job of a restored veteran purely because the employee is a

veteran, unless personal fault of the veteran provides excuse for the elimination of the job; nor can we say as a matter of law that the economic status of respondent did not warrant the decision to abolish petitioner's position.

For the reasons stated, the order of the district court must be affirmed.