**KEMP v. JOHN CHATILLON &
SONS, Inc.
No. 9414.**

Circuit Court of Appeals.
Third Circuit.
Argued March 5, 1948.
Decided July 6, 1948.

Joseph B. Schwartz, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellant.

Benjamin Werne, of New York City (Herman Scott, of Passaic, N. J., on the brief), for appellee.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

Kemp, an honorably discharged veteran, has appealed from a judgment of the court below denying him compensation in a suit brought by him pursuant to Section 8(e) of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 308(e). He seeks to recover compensation at the "current" [1] rate of pay at the Chatillon plant from June 12, 1946 to August 7, 1946. He gained other comparable employment immediately after the date last mentioned. He does not seek reinstatement.

The facts are as follows. Kemp entered the Army of the United States on March 1, 1944 and was discharged therefrom on February 10, 1946. Prior to his induction he had been employed as a welder by Chatillon at the rate of $1.13 an hour for a period of about 4 months. At this time and at all pertinent times thereafter the Chatillon plant was operated under a "closed-shop" [2] contract with Metal Produc-

---

[1] This is the term employed in the petition.

[2] Neither the exact provisions of the closed-shop contract nor the contract itself were put in evidence. The parties refer to the closed-shop provisions of the contract as "standard" and treat them as prohibiting employment by Chatillon of any worker who does not join the Union. During Kemp's absence in the service it appears that a new contract requiring an increase in wages and other benefits was negotiated by the Union with Chatillon. The parties are in agreement that the new contract did not change or alter the closed-shop provisions in effect at the times when Kemp was first employed by Chatillon and when he was inducted into the Army.

Under these circumstances and in the interest of expedition we think it unnecessary to remand the cause for the specific purpose of requiring these contracts to be received in evidence by the court

tion and Novelty Workers Union Local 28A.[3] It is agreed by the parties and there is no question but that the "standard" closed-shop provisions of the contract in operation at the times when Kemp was first employed by Chatillon and when he was inducted into service provided that no workman should be employed at the plant who was not a member of the Union except individuals employed during a preliminary trial period whom the Union authorized as workmen by the usual system of "working permits". Under this system Kemp paid 50¢ a week, or approximately $2. a month, to the shop steward for working permits. Kemp also paid $22. to the shop steward as a union initiation fee. This sum, however, was returned to him by the shop steward prior to Kemp's induction. It appears also that upon Kemp's reemployment by Chatillon he was paid $1.22 an hour.

The record indicates and the parties seem agreed that a new contract was executed between the Union and Chatillon while Kemp was in service and under this contract an increase in wages and other benefits were received by the workmen at the plant including Kemp. It is clear and subject to no dispute that the new contract between the Union and Chatillon continued in effect the closed-shop provisions of the contract which was in effect when Kemp first entered Chatillon's employment and when he was inducted into the Army.[4] Kemp continued in the employ of Chatillon after his reinstatement on February 14, 1946 until June 12, 1946 when he was discharged by Chatillon because he would not join the Union. It is clear also that repeated attempts to have him join the Union were made both by union officials and by officers of Chatillon. He refused because he was of the opinion that the Union rendered no substantial service to Chatillon's employees.

The court below found that the "union contract" requring union membership was in existence between Chatillon and the Union prior to his induction into service and during his absence therein and at the time of his reinstatement. This finding, subject to the qualifications set out in note 2 supra, is supported by the evidence. It found also that Kemp was reinstated "in his former position as a welder" at the wage of $1.22 an hour. This finding finds full support in the evidence. The court also determined that Kemp was not entitled "to the benefits in the petition" because he was not a member of the Union and he refused to join the Union. The learned trial Judge found also that Kemp was not a "temporary employee" of Chatillon. The court below did not find that Kemp was discharged either for cause or "without cause" within the purview of Section 8(c) of the Act. Kemp has appealed from the adverse judgment.

Section 8(b) (B) of the Act provides that the returning veteran shall be restored to his former position or to one of like seniority, status and pay, and Section 8(c) states that upon his return to employment the veteran shall not be discharged from his position "without cause" within one year of his restoration. The prime question for our determination therefore is whether the discharge of a veteran for failure to join a union in a plant subject to the closed-shop provisions of a contract between the union and the employer is a discharge "without cause" within the meaning of the statute. Conversely, of course, if the ruling of the court below is to be sustained, we must hold as a matter of law that the discharge of Kemp under the circumstances of the case at bar is a discharge for cause.

What the legal rights of a veteran would be if a company had no closed-shop agreement with a union prior to his induction into the service and negotiated such an agreement while the veteran was in the Army or after his return need not be dis-

---

below. We take this occasion, however, to point out that in every case such as that at bar it will be of substantial assistance to the trial court as well as to this tribunal if all pertinent contracts are introduced in evidence.

[3] The Union is also referred to in the record and briefs as "Metal Producers and Novelty Workers Union"; the "Met-

al Polishers' Union, Local 28"; and "Metal Polishers Union, Local 28-A".

[4] The court below made no direct findings of fact upon this point but did find: "j. That the petitioner took advantage of the services of the union in getting an increase in wages and other benefits."

cussed in view of the facts of the instant case. But in the case at bar one of the conditions of Kemp's employment at Chatillon's plant was union membership. This was a condition at the time when Kemp was first employed, remained such during his absence in the Army of the United States, and continued as a condition of employment at the time when he was reinstated on June 12, 1946. Kemp himself recognized this condition as binding on him during his original employment before he entered the Army for he paid 50¢ a week for working permits and the Union's initiation fee. While the initiation fee was returned to him, this was by favor of the shop steward as Kemp himself recognized.[5] Insofar as the closed-shop provisions were concerned the escalator of employment had not changed its position in any wise, either to the benefit or to the detriment of Kemp or his employer. Cf. Fishgold v. Sullivan Corporation, 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. There is no question but that the Union was the bargaining agent for Chatillon's employees or that the contract (or contracts) entered into between the Union and Chatillon was a bona fide agreement and one intended to be effective and binding upon the parties. Closed-shop provisions were then legal. Cf. the Labor-Management Relations Act, 29 U.S.C.A. § 158, which did not become effective until August 23, 1947.

No legislative history has been cited to us and we can find none which is helpful in determining the intent of Congress when it employed the phrase "without cause" in Section 8(c) of the Act. If the word "cause" be given its ordinary and usual definition, as we think it must, it may be deemed to mean "that which occasions or effects a result * * *". Webster's New International Dictionary, 2d Ed. But if we define the word "cause" in such broad terms we state nothing but an abstraction. The words "without cause" as used in Section 8(c) were defined in Hoyer v. United States Dressed Beef Co., D.C.S.D., Cal., C.D., 67 F.Supp. 730, 732, as meaning " * * * the absence of any legal ground or excuse in the performance of a person's work, which would warrant his being laid off." Cf. Grubbs v. Ingalls Iron Works Co., D.C.N.D., Ala., S.D., 66 F.Supp. 550. But see Feore v North Shore Bus Co., D.C.E.D.N.Y., 68 F.Supp. 1014, 1017, in which it was held that compelling an employer to breach a union contract in order to restore a veteran to a position of like seniority, status and pay was not "unreasonable" within the purview of Section 8 (b) (B) of the Act. The decision last cited, however, was reversed by the Circuit Court of Appeals for the Second Circuit, 161 F.2d 552, and in any event, must be read insofar as the law of this circuit is concerned, in the light of the decisions of this court in Gauweiler v. Elastic Stop Nut Corporation, 3 Circuit., 162 F.2d 448, and DiMaggio v. Elastic Stop Nut Corporation, 3 Cir., 162 F.2d at page 546.

■■ We think that the word "cause" as used in the statute does not necessarily mean "legal" cause; that is to say, a cause which would furnish the employee with a cause of action against his employer because of a dismissal or discharge. On the other hand we are of the opinion that the cause may not be a mere excuse or an arbitrary action on the part of the employer to avoid the impact of the statute. We think that the word "cause" as used in the Act was well defined by Judge Minton, delivering the opinion of the Circuit Court of Appeals for the Seventh Circuit, in Keserich v. Carnegie-Illinois Steel Corporation, 163 F.2d 889, 890. Judge Minton[6] said: "The cause intended by the statute does not have to be a legal cause. It may be such cause as a fair minded person may act upon, and where such action is not arbitrarily taken with a purpose or as an excuse to avoid the statute, it is cause within the meaning

---

[5] Kemp testified, "So * * * [the shop steward] gave it [the initiation fee] back to me, which he didn't have to do, but he was a real Joe; so that's why he done it."

[6] It should be noted that Judge, then Senator, Sherman Minton, was one of the managers of S.R. 4164, the bill which embodied the particular language quoted and referred to, and was also a member of the Conference Committee which resolved the differences in the bills of the House of Representatives and of the Senate. See House Misc. Reports, 76th Cong., 3rd Sess., House Report No. 2937.

thereof." In short, the test which must be applied is whether or not the discharge by the employer was a reasonable one under the circumstances.[7]

Upon consideration of all the circumstances of the instant case and applying the test indicated we are of the opinion that Kemp's discharge was not "without cause" within the purview of the statute. Chatillon had entered into a binding and legal closed-shop agreement with the Union. The Union insisted that Kemp join its membership or be discharged. If Chatillon had insisted upon retaining Kemp in employment it would have breached the terms of its contract with the Union. Moreover, it would have run a substantial risk of disrupting its labor relations and it might reasonably have anticipated a strike at its plant. Prior to his induction into the Army, as has been stated, Kemp recognized the closed-shop provisions as binding on himself and Chatillon since he secured working permits from the Union and paid his initiation fee to it. He also received the benefits of the increased wages negotiated by the Union. By these statements we do not intend to say that Kemp is estopped from asserting his rights under the Act but as indicated he subjected himself to the closed-shop provisions of the Union's contract with Chatillon. While the Act must be construed liberally for the benefit of the veteran, we may not hold that a condition of employment to which the veteran

himself has in fact subscribed may be disregarded either by him or by his employer. This, we think, is the plain intendment of the decision of the Supreme Court in Fishgold v. Sullivan Corporation, supra. It follows that Kemp's discharge was for cause. The judgment of the court below will be affirmed.

[7] See also the "Handbook Veterans Assistance Program of the Selective Service System", presenting the official statement of policy, operating procedure, and interpretation of the Veterans Assistance Program of the Selective Service System, which states in pertinent part as follows:
"Part III, Chapter 6, Rights after reinstatement.
*   *   *   *   *   *   *
"306.3 Employment for 1 year— Discharge for Cause.
*   *   *   *   *   *   *
"(b) The veteran's right to be continued in employment for a period of 1 year after reinstatement is conditioned only upon the veteran satisfactorily complying with the ordinarily accepted standards of personal conduct and work performance required of other employees. A violation of such standards on the part of the veteran, or a change in the employer's circumstances that makes it unreasonable or impossible for the employer to continue the veteran in employment such as would have justified a refusal of original reinstatement, may constitute 'cause' for discharging the veteran during the period of 1 year following reinstatement.
*   *   *   *   *   *   *
"306.4 Conditions of Work.—Upon reinstatement, a veteran is subject to the same rules of the employer governing working conditions and personal conduct that apply to other employees; however, he is entitled to be retained in his former position or one of like seniority, status, and pay, for a period of 1 year following reinstatement and he may not be discharged without cause during that period. (See sec. 306.3 (b).)"