## FOOR v. TORRINGTON CO.
### No. 9509.

United States Court of Appeals
Seventh Circuit.

Nov. 11, 1948.

Rehearing Denied Dec. 8, 1948.

Warren E. McGill, Seebirt, Oare & Deahl, Orlo R. Deahl, James F. Thornburg, Warren A. Deahl, and Paul R. Moo, all of South Bend, Ind., for respondent-appellant.

James E. Keating, of South Bend, Ind., and Gilmore S. Haynie, Asst. U. S. Atty., and Alexander M. Campbell, U. S. Atty., both of Ft. Wayne, Ind., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This appeal is prosecuted from a judgment in which the respondent was ordered to pay to the petitioner money damages in the amount of $370.20. The proceeding was initiated with a petition for enforcement of a veteran's reemployment rights under The Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 301 et seq. After hearing the evidence the trial judge, sitting without a jury, filed his findings of fact and conclusions of law.

Respondent is engaged in the production of bearings of practically every type to meet requirements on specific orders. Shortly before and continuing to the end of the hostilities in World War II the respondent was engaged in, among other

things, the production of bearings essential to the construction of various types of naval guns and different types of army tanks. Almost all of respondent's production during this period carried the highest possible priority rating, and the number of its employees was almost doubled from 1939 to 1945.

Petitioner entered the employ of respondent as a polisher on August 11, 1941. On June 1, 1942 he was transferred to the position of operator of a Bantam Bore Grinder where he was still employed when he was inducted into the armed forces on January 7, 1944. He was honorably discharged from military service on April 7, 1944, and on April 20, 1944 he applied to respondent to be reinstated at his former job. Respondent thereupon reemployed petitioner at his former job as operator of a Bantam Bore Grinder. May 8, 1944, respondent transferred petitioner and three others from the Bantam Bore Grinder department to the Blanchard Grinder department in an effort to break a serious bottleneck which existed in the latter department. The four men transferred, including petitioner, refused to accept the transfer, whereupon all of respondent's employees went out on strike. The matter of the forced transfers was referred to the War Labor Board and it upheld respondent's right to make the transfers in the interest of increased production. It appears that just prior to the transfers in question five other men were transferred from other positions to the Blanchard Grinder department. Only one of the previous five transferred came from the Bantam department and he had less seniority than the petitioner. All the transfers in question were made on the basis of seniority and the employment in a former position which could be filled by women, the only type of employee then on the labor market.

The District Court found as a fact that in April, 1944 respondent, faced with a demand by the Navy Ordnance department that it fulfill an increased shipping schedule, determined that a bottleneck existed in its Blanchard department which could be met only by the addition of more operators on the Blanchard Grinders and that the only qualified operators available were the men working on the Bantam Bore Grinders. After being transferred petitioner was replaced as a Bantam Bore Grinder operator by a female employee with less seniority, who because of her lack of qualifications did not set up the work on, nor service, the machine. At the time of petitioner's transfer the basic rate of pay was three cents more on the Bantam Bore Grinder than the rate of pay on the Blanchard Grinder. (From the oral argument of the respondent we learned that the operation of a Blanchard Grinder was done on a piece work basis.) On a practical basis of financial remuneration for petitioner, however, the transfer meant a decrease in pay from $2 per hour to $.75 per hour.

During the period of this controversy, petitioner was a member of the United Automobile Workers of America, Local 590, the only union in respondent's plant. A collective bargaining contract between the union and respondent existed at the time, which provided in part that straight seniority reckoned from the original date of hire should prevail. A subsequent agreement between the union and the respondent, relating to forced transfers, was entered into on May 17, 1944, nine days after the transfer of petitioner. Due to the relaxation of the Navy's requirements and the forced transfers the bottleneck was broken, and petitioner was returned to his former position as operator of the Bantam Bore Grinder on July 24, 1944. The judgment represented the sum of money petitioner would have received had he remained on the Bantam Grinder from May 8 to July 24.

In seeking to reverse the judgment respondent contends that (1) petitioner left a temporary position to enter the armed forces, and that he therefore is not entitled to any reemployment rights under the Act; (2) the forced transfer was a transfer for "cause" within the terms of the Act; and (3) petitioner was transferred pursuant to a forced transfer provision of a non-discriminatory collective bargaining contract which is binding upon him.

First. The applicable provisions of § 8 of the Act are noted below.[1] In arguing that what Foor left was a temporary position and not protected by the terms of the Act, respondent says that the position of operator of a Bantam Bore Grinder in its plant was created by the extraordinary demand for war materials and that its and the nation's increased industrial expansion which was fathered by war conditions was predicated on a temporary basis. While willing to take note judicially of the nation's industrial condition about the time of the recent war, we must conclude that respondent's contention is hardly tenable in the light of the instant facts. Here petitioner met the requirements of the Act by his honorable discharge, his qualification to do the work and his timely application for reemployment, and it is significant that he was restored to the position he had left. Moreover, the cases cited by respondent in support of its argument are distinguishable upon their facts.

In Olin Industries v. Barnett, D.C., 64 F.Supp. 722, the company sought by a declaratory judgment to have the court determine the rights of certain employees under the Act. It is true that the court held that the abnormal increase due to wartime expansion of the number of persons employed at one position made that position a temporary one as to an otherwise qualified veteran, but only if the veteran's accumulated seniority status were less than that of the person he was seeking to replace. See also Lord Mfg. Co. v. Nemenz, D.C., 65 F.Supp. 711. This interpretation as to seniority was subsequently approved in the now famous case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L. Ed. 1230, 167 A.L.R. 110. This specific phase of the seniority question, however, is hardly determinative of this case. In Gualtieri v. Sperry Gyroscope Co., D.C., 67 F.Supp. 219, the circumstances of the company had so changed that the petitioning veterans reapplied for positions the like of which were no longer in existence. This condition Congress concededly did not include within the terms of the Act. 50 U.S.C.A.Appendix, § 308(b). (B).

In attempting to determine the Congressional meaning of "other than * * * temporary" we are persuaded by the language of Bryan v. Griffin, 6 Cir., 166 F.2d 748, 750, wherein the court was considering an employment relationship which commenced late in 1942. In rejecting any hint that the word "permanent" be read into the statute, the court 166 F.2d at page 750 said: "We cannot assume that the Congress meant this enactment to apply only to jobs in existence prior to the years of the war emergency. 'Temporary,' we think, means 'lasting for a time only,' or casual, as distinguished from regular. It does not apply to continuing service such as was rendered by

---

[1] "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\*　\*　\*　\*　\*　\*　\*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\*　\*　\*　\*　\*　\*　\*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

this appellant. Since employment for an indefinite period was contemplated in a position to be held at mutual will until terminated, we think the position was 'other than * * * temporary.'"

When as here, a returning veteran is reinstated in his former position pursuant to the terms of the Act and then replaced at that position within the one year period of grace, the company cannot be heard to argue that the position is temporary. The District Court found as a fact that Foor's position was other than temporary. In the light of the facts we cannot say that this finding is not supported by substantial evidence.

■ Second. Respondent argues that the transfer of the petitioner from the Bantam Bore department to the Blanchard Grinder department less than one month after his reinstatement was made solely for the purpose of increasing vital production, and, therefore, that it was for cause within the meaning of the Act. While assuming the good faith of respondent and accepting the veracity of its reason for the transfer of petitioner, the question still remains as to whether this reason is "for cause" within the contemplation of the Act. It is crystal clear that a demotion is the equivalent of a discharge. Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 275, 286, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and a reasonable interpretation of the effect of transferring a person to a position paying less money is that it is a demotion. The respondent states that the intention of Congress as to this provision was that "cause as a fair minded person [employer] may act upon and where such action is not arbitrarily taken with a purpose * * * to avoid the statute." This court used the foregoing language in Keserich v. Carnegie-Illinois Steel Corp., 7 Cir., 163 F.2d 889, 890, which case is relied upon by respondent. It should be noted that in construing the intention of Congress we stated as an original premise that the cause need not be a legal cause, and from that we proceeded to state the quoted and the additional definition of cause which was initiated with the words

"It may be." The court in Kemp v. John Chatillon & Sons, 3 Cir., 169 F.2d 203, 207, adopted the Keserich case's definition of cause and concluded that the test was "whether or not the discharge by the employer was a reasonable one under the circumstances." In each case the veteran's discharge was precipitated by his own action. In the Keserich case the veteran, a foreman, was discharged for failure to perform duties assigned to him during a strike. In the Kemp case, the veteran was discharged pursuant to a closed shop agreement when he refused to join the union. It appears that an earlier closed-shop agreement was in existence prior to Kemp's induction into service, and while he was not a member of the union at that time he accepted this condition of the agreement by taking out a working permit during his probationary period. In our case the transfer of petitioner was precipitated by the decision and the action of respondent.

■ Cause for discharge within the meaning of the Act may arise from severe adverse economic conditions, which necessitate a retrenchment and the dissolution in good faith of existing jobs. See Ruesterholtz v. Titeflex, 3 Cir., 166 F.2d 335, and Hoyer v. United Dressed Beef Co., D. C., 67 F.Supp. 730, 733. Such, however, is not the circumstance here. The petitioner's job remained after his transfer and was filled by a female employee having less seniority than petitioner. True, there was testimony on behalf of respondent that it believed the position of operator of the Bantam Bore Grinder to which petitioner was restored was materially changed because the woman replacement could not and did not set up and service her machine. In the light of all the evidence, however, we believe that the District Court's conclusion that the respondent's circumstances at the time of the demotion had not so changed as to make it unreasonable to retain petitioner at his former position was proper. Respondent's decision to transfer, while doubtlessly made in good faith, was not prompted by any behavior on the part of petitioner, or conditions forcing the dissolution of the position.

Third. Respondent's final contention is that the transfer was made pursuant to a provision of an effective collective bargaining contract which was applicable without discrimination to all employees. At the period in question petitioner was a member in good standing of the only union in respondent's plant. The District Court found as a fact that during this period an agreement existed between respondent and the union which provided in part that straight seniority reckoned from the date of original hire should prevail so far as qualifications and ability to perform services should permit. It further found that under the contract it was the practice to make all transfers and demotions on the basis of straight seniority. The respondent argues that as the transfer of petitioner was upheld by the War Labor Board and that as the operation of the contract accorded all employees, veteran and non-veteran, the same treatment, the contract was binding upon him. We do not presume to review the directive of the War Labor Board. As to the statement of the general principle in regard to the binding effect upon a veteran of an effective, non-discriminatory collective bargaining agreement we are in accord. In and of itself this statement is well bottomed in the law. In the instant case, however, there was the additional factor of a statute. The trial judge recognized this in his memorandum opinion in the following words: "Where there is a conflict the contract must give way to the statute." Under the circumstances appearing herein it is inescapable that the transfer was not only a violation of the contract's seniority rule but it also clashed with the comparable seniority provision of the Act, i. e., petitioner was replaced as an operator of the Bantam Bore Grinder by an employee with less seniority. The burden rested upon the respondent to show that at the time of the transfer all the Bantam Bore Grinder operators were senior to petitioner. Bryan v. Griffin, supra, 166 F.2d 748, 751. This it did not attempt to do.

The judgment of the District Court is affirmed.