## SUNDRA v. ST. LOUIS AMERICAN LEAGUE BASEBALL CLUB.

### No. 5624.

United States District Court.
E. D. Missouri, E. D.

Dec. 14, 1949.

Drake Watson, United States Attorney, St. Louis, Mo., Allan Goodloe, Assistant United States Attorney, St. Louis, Mo., for petitioner.

James V. Dunbar (of Dunbar & Curby), St. Louis, Mo., for respondent.

HARPER, District Judge.

Petitioner in this action seeks judgment under Section 8 of the Selective Service and Training Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308, for loss of wages from the 8th day of June, 1946, for the balance of the 1946 baseball year.

The petitioner in the spring of 1944 signed a contract with the respondent for the sum of $8,000.00 per year, and after the baseball season started, on May 9, 1944, was inducted into the Armed Services, where he served with honor until he was honorably discharged in February, 1946. After being discharged the petitioner contacted the respondent, who in due course signed him to a contract for the year 1946 for $8,000.00, and ordered him to report to spring training at Anaheim, California. Petitioner participated in spring training and returned to St. Louis, Missouri, with the respondent's club and was a member of the club until he was given his unconditional release on May 29, 1946.

It is the petitioner's contention that he is entitled to the difference between the pay that he received from the respondent up to May 29, 1946, and the $8,000.00, or the sum of $5,413.40, claiming the respondent had violated the Selective Service and Training Act of 1940, as amended, by discharging him before the end of one year without cause. The respondent admits that the Selective Service and Training Act of 1940, as amended, is applicable to this respondent, but denies that it discharged petitioner without cause.

 Section 8(c) of the Act provides in part: " * * * and shall not be discharged from such position without cause within one year after such restoration." Whether or not there was cause for the discharge of Sundra by the respondent is a question of fact. The 7th Circuit Court of Appeals in the case of Keserich v. Carnegie-Illinois Steel Corporation, 7 Cir., 163 F.2d 899, loc.cit. 890 said: "The cause intended by the statute does not have to be a legal cause. It may be such cause as a fair-minded person may act upon, and where such action is not arbitrarily taken with a purpose or as an excuse to avoid the statute, it is cause within the meaning thereof."

 There is no dispute here as to the petitioner being restored to his former job upon completion of his military service. With respect to the job to which Sundra was restored, it was subject to the same

hazards of employment upon his return that it was when he entered the service. The 2nd Circuit Court of Appeals in the case of Rishgold v. Sullivan Dry Dock and Repair Corporation, 154 F.2d 785, loc.cit. 788 (later affirmed by the Supreme Court, 328 U.S. 275, 66 S.Ct. 1105, 90 L. Ed. 1230, 167 A.L.R. 110), said: "It seems to us that Congress used 'discharge' in this sense: i.e., that the veteran was to be assured of his job for the same period—a year—for which he was to be drafted; but that the job to which he was 'restored'— as that very word implies—was to be subject to the same conditions to which the old job had been subject * * *. The value of that assurance would indeed vary."

Judge Black in the case of Niemiec v. Seattle Rainier Baseball Club, D.C., 67 F. Supp. 705, loc. cit. 712, said: "The veteran must be qualified to perform the duties of his position. * * * The employer may adopt fair and reasonable standards of qualification for work performance."

 The status of a professional baseball player is unlike that of employees in virtually every other employment. Baseball is not only a business, but a sport and source of entertainment. The position of each player is constantly subject to personal competition. The public demands the highest in skill and ability, and the will of the public is supreme, for it is the result of their patronage that professional baseball is the popular American past time. This is probably why the players' contracts provide that they may be terminated or assigned at any time.

In 1944 when Stephen R. Sundra was 34 years of age, he entered the Armed Services. He had just completed winning two games with the St. Louis Browns, the American League champions of that year. He carried into the service with him a record of having risen from the sand lots to the pinnacle of baseball success, a pitcher on two World Championship teams, the New York Yankees in the years 1938 and 1939, and in 1939 of having led his league in victories and being second only to the great Lefty Grove in earned run average.

Sundra was sold by the Yankees to the Washington Senators in 1940, and thence to the St. Louis Browns in 1942. Before the war during each year of his stay with the St. Louis Browns he was a winning pitcher.

In the spring of 1946 after his discharge from the Army, Steve Sundra reported and participated in spring training, and remained with the club for over a month of the regular season. He thought that he could be a winning pitcher in the year 1946, and some of his team mates of that year were of the same opinion, yet the team mates who were probably in a better position to judge his work were of a different opinion. Joe Schultz, who probably worked more with the pitchers than any other catcher on the club, stated that Sundra didn't throw very hard and that he didn't think Sundra could pitch very well in 1946. Freddy Hoffman, a baseball man with much experience, was of the opinion that Sundra did not have his pre-war ability. Zach Taylor, the pitcher coach and present manager of the St. Louis Browns, did not think Sundra was as good as when he was inducted into the service and did not think he was capable of helping the 1946 ball club. Charley and William DeWitt, experienced baseball men and present owners of the club, were of the same opinion. These men were disappointed that Sundra, after having been given an opportunity to get back in shape and prove his ability, could not make the grade in 1946. Sundra was a fast ball pitcher, and while the records do not so disclose, I think the court is fully justified in concluding that the pitching life of fast ball pitchers is less in most instances than that of other pitchers.

The club was faced with the rules of the game that only a limited number of persons can be carried on the roster, and the public demands that they be the best available. The members of the Browns staff who were judging players, that testified, were unanimously of the opinion that Sundra could not pitch major league ball in 1946. Taylor Spink, an international authority on baseball, said that in 1946 there was a shortage of pitchers in the major leagues, and that a pitcher with ability could find a job. Roy Stockton, Sports' Editor of the St. Louis Post-Dispatch, and one of America's best known sports writers, said: "I think that the offering of free agency to a ball player is the greatest thing they can offer him if he has anything left to sell. The average ball player who has a year or two left of good baseball can sell himself for a pretty good price if he is given his free agency." After the other major league clubs had waived on him, Sundra was made a free agent when he was discharged on May 29, 1946, at a time when there was a shortage of pitchers, indicating that if he had been capable of pitching big league ball that he would probably have had little trouble in signing with another major league club. Sundra tried to sign with other major league clubs, but was unsuccessful. This substantiates the testimony of Zach Taylor, Freddy Hoffman, Joe Schultz, and Charley and William DeWitt that Sundra had so slowed up while he was in the war that he was unable to pitch major league baseball.

The basis of respondent's action was such as a fairminded person might act upon and was not a mere excuse or an arbitrary action to avoid the provisions of the statute. Sundra lacked the skill and ability to pitch in the major leagues in 1946 and he was given his unconditional release for just cause within the meaning of the act.

Petitioner's prayer for relief will be denied. Attorney for respondent will submit findings of fact, conclusions of law and judgment for approval, signature and entry.