## KOONS v. LEBANON STEEL FOUNDRY.
### Civ. A. No. 2762.

United States District Court
M. D. Pennsylvania.
Sept. 25, 1950.

Arthur A. Maguire, U. S. Atty., Joseph P. Brennan, Asst. U. S. Atty., Scranton, Pa., for plaintiff.

H. Rank Bickel, Jr. (of Bickel & Ehrgood), Lebanon, Pa., for defendant.

MURPHY, District Judge.

After plaintiff's discharge from military service in the recent World War, he was restored to his former position by the defendant, a private employer, in accordance with Section 8 of the Selective Training and Service Act of 1940, as amended.[1] Within a year thereafter plaintiff was discharged by the defendant from his employment. Plaintiff seeks, under Section 8(e) of the Act,[2] reinstatement and compensation for the time lost in the interim asserting that defendant discharged him from his position without cause contrary to Section 8(c)[3] of the Act.

The pertinent facts are as follows: Plaintiff and one William Buser were employed on the midnight to 8:00 A.M. shift as X-ray technicians in the defendant's radiograph department. Their work was to take X-ray pictures of steel castings and to develop the films. They were paid a basic hourly rate and, in addition, premium pay if their production of units exceeded a prescribed minimum standard. There were two employees similarly employed on each of the other two shifts daily making a total of six in the department.

The six employees decided on occasion to develop a "batch"—a large number of films—at one time. This resulted in the films clotting or sticking together causing water spots on the films and producing defective work. The foreman complained to some of the six as to the quality of their work. Thereafter no credit was given for badly developed films in determining premium pay. The basic hourly rate was not disturbed. No complaint was made to plaintiff; no reduction was made in his premium pay.

At no time did any of the six make any attempt to talk the matter over with the defendant's department heads in an endeavor to reach an understanding. No complaint was made as to the disallowance of credit for faulty work. Instead they placed a card on the wall in the department stating that if there were any more "cutbacks" on their premium pay, there would be a complete stoppage of work in the department until the matter was adjusted. This was not brought to the defendant's attention.

Shortly thereafter when plaintiff and William Buser arrived at the department to commence work, the two employees on the shift then ending notified them that a similar instance had again occurred affecting the premium pay of some of the six. After contacting the two employees who were absent, by phone, the six decided on a walkout. Whereupon the plaintiff and Buser, without consulting or advising their immediate superiors and without leaving anyone to take care of the work, or of the department, left their posts of duty and walked off the job.[4] They knew that stoppage of work in that department would slow down the work of the other departments. They also knew that the rules and regulations of the defendant required that if any employees had a grievance, they were to take it up with their superiors; that they were not to leave the premises during the time they were supposed to be on the job without first advising their superior officers.

When the six met with defendant's plant superintendent the next morning, the two who deserted their posts were discharged. Such disciplinary action was customary at defendant's plant when an employee "walked off the job." Buser was a nonveteran, employed in the department much longer than the plaintiff.

Was plaintiff discharged "without cause" within the purview of section 8(c)?[5]

---

1. 50 U.S.C.A.Appendix, § 308(b) (B).

2. 50 U.S.C.A.Appendix, § 308(e).

3. 50 U.S.C.A.Appendix, § 308(c).

4. Plaintiff in his depositions and Buser on the stand testified that a phone call was made to defendant's foreman protesting the reduction for faulty work; of his advising them that nothing could be done at that hour but that there would be a meeting arranged in the morning.

5. Section 8(c) provides: "Any person who is restored to a position * * * shall not be discharged from such position without cause within one year after such restoration."

As to the measure of protection granted to returning veterans, see Fishgold v.

■ The "cause" intended by the statute does not have to be a "legal cause", i. e., a cause which would furnish the employee with a cause of action against his employer because of a dismissal or discharge.[6] It may be such cause as a fair-minded person may act upon, and where such action is not arbitrarily taken with a purpose or as an excuse to avoid the impact of the statute, it is cause within the meaning thereof. In short, the test is whether or not the discharge was reasonable under the circumstances. Keserich v. Carnegie-Illinois Steel Corp., 7 Cir., 1947, 163 F.2d 889; Kemp v. John Chatillon & Sons, Inc., 1948, 3 Cir., 169 F.2d 203.[7] Defendant employer had a right to expect from the plaintiff "compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of duty of all employees." See Manowitz v. Einhorn Wholesale Grocery, supra, 68 F.Supp. at page 908. It had a right to have plaintiff, its employee, obey its lawful and reasonable rules, regulations and instructions in regard to discussing any grievances that might arise with his foreman or immediate superior; and to look to him for the performance of whatever lawful and reasonable tasks were assigned; and to give notice before he abandoned his post.

■ Plaintiff having deserted his post of duty under the circumstances so as to cause a complete shutdown of the department and the slowing down of the other departments, did not meet defendant's standards. The basis of the defendant's action in discharging him, particularly in view of the custom at defendant's plant, was such as a fair-minded person might act upon. Plaintiff's discharge, coincident

Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; Oakley v. Louisville & N. R. Co., 338 U.S. 278, 70 S.Ct. 119; Kay v. General Cable Corp., 3 Cir., 1944, 144 F.2d 653; Ruesterholtz v. Titeflex, Inc., 3 Cir., 1948, 166 F.2d 335; and the Opinion of this Court in Bozar v. Central Penn Quarry, Stripping & Construction Co., D.C., 73 F.Supp. 803. As to compensation, see Van Doren v. Van Doren Laundry Service, 3 Cir., 162 F.2d 1007.

6. The Government cites § 13, National Labor Relations Act, 29 U.S.C.A. § 163; § 101, Labor Management Relations Act of 1947, 29 U.S.C.A. § 163, as to the right to strike; but see Dorchy v. Kansas, 272 U.S. 306 at page 311, 47 S.Ct. 86, 71 L.Ed. 248; International Union, United Auto Workers v. Wisconsin Employment Relations Board, 336 U.S. 245, at page 258, 69 S.Ct. 516, 93 L.Ed. 651; N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L. Ed. 627, 123 A.L.R. 599; Scullin Steel Co., 65 N. L. R. B. 1294 (1946); Thompson Products Inc., 72 N. L. R. B. 886 (1947); National Electric Products Corp., 80 N. L. R. B. 995 (1948). As to the right to discharge, they cite N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A. L.R. 1352; but see Id. 301 U.S. page 45, 57 S.Ct. page 628, N. L. R. B. v. Mackay Radio & Tel. Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; but see N. L. R. B. v. Sands Mfg. Co., 306 U.S. 332, at page 334, 59 S.Ct. 508, 83 L.Ed. 682. The question of whether defendant was guilty of an unfair labor practice or whether he would have a right to discharge under those Acts is not before us on this record. See United Office and Professional Workers v. Smiley, D.C.M.D.Pa.1948, 77 F.Supp. 659, and United States ex rel. Deavers v. Missouri, K. & T. R. Co., 5 Cir., 1949, 171 F.2d 961. (See In re Elk Lumber Co., 19 L.W. 2126.)

7. See Id. 169 F.2d at page 206 as to the legislative history and as to the weight to be given to then Judge, now Mr. Justice Minton's interpretation in the Keserich case, supra, because of his work on the bill during its passage in the Senate, and see the footnote in the Kemp case, supra, 169 F.2d at page 207 as to the Veterans' Administration's interpretation.

In the following cases the discharge was found to be reasonable: Basham v. Virginia Brewing Co., Inc., D.C., 66 F. Supp. 718; Manowitz v. Einhorn Wholesale Grocery, D.C., 68 F.Supp. 907; Pelot v. Schott, D.C.M.D.Pa., Watson J., 70 F.Supp. 981; Daniels v. Barfield, D.C.M.D.Pa., Follmer J., 77 F.Supp. 283; Sundra v. St. Louis American League Baseball Club, D.C., 87 F.Supp. 471; cf. Hoyer v. United Dressed Beef Co., Inc., D.C., 67 F.Supp. 730.

with a discharge of a nonveteran of longer experience, was not a mere excuse or an arbitrary action to avoid the provisions of the statute.

The foregoing are adopted as findings of fact and conclusions of law herein.

We hold that the plaintiff was discharged for cause, and the relief prayed for must, therefore, be denied.