**Thomas H. O'BRIEN**

v.

**The UNITED STATES.**

**No. 50061.**

United States Court of Claims.

Nov. 2, 1954.

248

Carl L. Shipley, Washington, D.C., for plaintiff.

Paris T. Houston, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This case involves an alleged failure to restore plaintiff, who was entitled to the benefits of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 851 et seq., to the position which he held at the time he entered the military service.

In May 1942 a civil service examination was held to establish a civil service register of persons eligible for appointment to positions in the Wellsville, New York, post office. The positions included substitute clerks and substitute carriers. Plaintiff, along with a number of other applicants, passed this examination and was placed as number three on the eligible list.

In the meantime plaintiff accepted employment during the summer of 1942 by an oil refinery in Rhode Island.

After taking the civil service examination in May 1942 plaintiff talked with the postmaster about the prospects of an appointment and was told by the postmaster that he expected to appoint three substitutes. Plaintiff understood the postmaster to imply that if opportunity presented he would be glad to give plaintiff one of the appointments. Plaintiff was not in Wellsville although his family was there when the results of the examination were announced. The list of eligibles is set out in finding 5.

Soon after plaintiff learned of the results of the examination he resigned his position with the oil refinery and returned to Wellsville in anticipation of receiving one of the appointments.

When plaintiff conferred with the postmaster he was told that one appointment would go to John P. Hollod, who was first on the list, and who had a veteran's preference; that the second appointment would be given to James N. Gardner, who was second on the list, and that Francis J. Fagan, who was fifth, would receive the third appointment. The man occupying fourth place on the list was offered an appointment but declined it.

In assigning his reasons for not appointing plaintiff, who was third on the list, to one of the positions the postmaster stated that O'Brien had first come to Wellsville in 1941 to work for the local refinery but that his home was understood to be in Rhode Island. He brought his wife and small daughter to live in a rented house in Wellsville, but in July 1942 he left the community and it was reported that he had gone to work in a refinery in another state and that it was not known whether he intended to return to Wellsville; that he had considered these and other facts in connection with the eligibility of the plaintiff.

Plaintiff was upset and angry over his failure to receive one of the appointments. He applied for and received unemployment compensation and engaged in some miscellaneous work, remaining in Wellsville during September, October, and November 1942.

On December 1, 1942, plaintiff was employed by the Wellsville post office as a temporary substitute carrier. This was for the Christmas rush during the month of December. It was so understood by both plaintiff and the postmaster. The employment was terminated December 31, 1942.

The postmaster found plaintiff's work satisfactory during this period. but also found him "belligerent, opinionated, and unpopular among other employees. * * prone to argue * * *." The postmaster regarded him as a troublemaker.

Both Gardner and Hollod entered the military service in the latter part of 1942 and Francis J. Fagan entered the service of the Navy in January 1944. The postmaster on January 20, 1944, employed plaintiff as a substitute clerk. It was a war service indefinite appointment. In March plaintiff was ordered to report for preinduction physical examination and on March 17 was certified as physically fit. Since a call to service early in April was anticipated, plaintiff was given leave on March 29, 1944. He entered the Navy on April 25, 1944, and remained on active duty until August 20, 1945, when he was honorably discharged. He then held the grade of mailman third class, and was discharged with a service-connected disability rated 30 percent.

In the fall of 1945 plaintiff wrote to the postmaster at Wellsville informing him of his release from the service by honorable discharge and making inquiry concerning the prospects of further employment by the Wellsville postoffice. This letter was not preserved by the Wellsville postmaster and plaintiff kept no copy. The plaintiff fixes the date of the letter as October 19, 1945.

In the latter part of 1945 the postmaster wrote to plaintiff in reply to the letter described. This letter is set out in finding 17 and seems to refer primarily to the question of plaintiff's status as a civil service employee and to evidence the desire on the part of plaintiff to secure a regular appointment. However, some other matters were discussed.

There followed considerable correspondence between plaintiff and the Civil Service Commission as to plaintiff's status in the classified service. Quotations from these letters are set out in findings 18 to 21, inclusive. The Civil Service Commission indicated in these letters that plaintiff was no longer on the active civil service register.

On August 16, 1946, an examination was held for employment in the railway mail service. Plaintiff passed this examination and on December 9, 1946, accepted an appointment as temporary railway mail clerk. He was promoted on December 30, 1946, and again on September 1, 1947, when he became a regular railway mail clerk. As of April 24, 1953, he was a grade 5 clerk in the same service.

Plaintiff continued to correspond with the Civil Service Commission as to his rights to have been restored in the fall of 1945 to the position which he had occupied at the time he entered the military service.

On March 15, 1947, while plaintiff was employed as a substitute railway mail clerk, he wrote a letter to the United States Civil Service Commission, in replying to which the President of the Commission indicated that plaintiff was entitled to restoration to duty in the position of substitute clerk in the Wellsville, New York, post office if he had applied for such restoration within 90 days of the date of his honorable discharge from the armed services, and had thus met the requirements for restoration.

In this letter of April 21, 1947, from the President of the Civil Service Commission, is the first direct reference in any of the letters that. are in evidence to the question of plaintiff's being restored to his former position in the Wellsville post office.

The evidence is conflicting as to whether plaintiff applied for such restoration within 90 days from the date of discharge as required by the statute. The postmaster states that the letter which plaintiff wrote him in the fall of 1945 was a personal letter inquiring as to his status and his opportunity for ap-

pointment in the regular service, and as to his status on the civil service register, and that as he remembers plaintiff did not make application for restoration, and that he did not understand that plaintiff was making such a request.

Plaintiff testified positively that in this letter of October 19, 1945, he did make application to be so restored. This letter, if written on that date, was within the 90-day period.

While the letters actually in evidence, and the testimony outside that of plaintiff, tend to bear out the postmaster, nevertheless, since these letters were in the possession of the defendant and were not produced and are not in evidence, we are inclined to resolve the doubt in favor of plaintiff's claim that he did so apply.

On October 19, 1945, plaintiff held a retention-preference rating higher than that of Connell McGinnis or R. Dow Stannard.

Connell McGinnis was displaced and was separated from the service on February 16, 1946, upon the return of Francis J. Fagan, who held a higher retention-preference rating than plaintiff, and who took the place of McGinnis. Stannard was displaced on March 15, 1946, upon the return of John P. Hollod, who held a higher retention-preference rating than plaintiff.

Had plaintiff been restored to the position which he held at the time he entered the military service he would not have been entitled to hold the place beyond the date March 15, 1946, when he would have been displaced by veterans' preference employees who held a higher rating than that of the plaintiff.

■ As stated in the case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 286, 287, 66 S.Ct. 1105, 90 L.Ed. 1230, the Veterans' Preference Act, while it should be liberally construed, was not intended to require the retention of a veteran when no work was available. At any rate, just before plaintiff was inducted into the military service he held an indefinite appointment.

His eligibility under the civil service had expired, hence he was entitled to be restored only for the period when work was available. He was not entitled to be retained in preference to veterans who held a higher preference rating.

The record shows that following October 19, 1945, plaintiff drew $20 per week unemployment compensation.

■ The plaintiff is entitled to recover for the period October 19, 1945, to March 15, 1946, at the rate of pay which he was receiving just prior to the date he entered the military service, less the amount of unemployment compensation he received during that period, and less any other amount he may have earned by any work which he performed during that period.

Entry of judgment will be suspended pending a stipulation by the parties showing the amount due plaintiff in accordance with this opinion.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, JJ., concur.