UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUSAN K. HANNAH,
<u>Plaintiff-Appellant,</u>

v.

DAVID M. HICKS, Commonwealth
Attorney for the City of Richmond,                    No. 97-1940
<u>Defendant-Appellee,</u>

and

CITY OF RICHMOND,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge;
Robert R. Merhige, Jr., Senior District Judge.
(CA-96-733-3)

Argued: January 29, 1998

Decided: September 4, 1998

Before ERVIN and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Bertram Mann, LEVIT & MANN, Richmond, Vir-
ginia, for Appellant. Frank Fletcher Rennie, IV, COWAN & OWEN,
P.C., Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Susan K. Hannah appeals from an order of the district court entering judgment for David M. Hicks whom she sued under the Veterans' Reemployment Rights Act. Finding no error, we affirm.

I

Hannah was hired by the Richmond Commonwealth's Attorney's office in 1992 during Joseph D. Morrissey's tenure. She has been a member of the United States Naval Reserve since 1982 and was ordered to six-months' active duty in June, 1993. In November, 1993, Hicks defeated Morrissey in an election for the position of Commonwealth's Attorney. Before taking office, Hicks requested that all of the employees of the Commonwealth's Attorney's office tender resignation letters. Hannah refused.

Hicks was sworn into office on January 3, 1994. Hannah was released from duty on January 19 and applied for reinstatement to the Commonwealth's Attorney's office that day. She was told that she would not be reinstated. Hannah contends that her rights under the Veterans' Reemployment Rights Act were violated when Hicks refused to reinstate her and that the district court's conclusion to the contrary is in error.

II

Hannah's action is governed by the Veterans' Reemployment Rights Act, 38 U.S.C. §§ 4301-07 (1988 & Supp. V 1993) (amended 1994). Section 4301 mandated:

> (a) In the case of any person who is inducted into the
> Armed Forces of the United States . . . for training and ser-

2

vice and who leaves a position . . . in the employ of any employer in order to perform such training and service . . .

. . .

 (b) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall--

 (i) if still qualified to perform the duties of such position or able to become requalified with reasonable efforts by the employer, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority, status, and pay . . . .

Section 4304(b)(1) extended these reemployment rights to members of the reserves called to active duty.

While the title of the Act and its breadth of application have changed over the years, the nature of the rights conferred by the Act has not changed significantly since its inception. An army appropriations act of 1916 provided that "Government employees . . . who respond to the call of the President for service shall, at the expiration of the military service to which they are called, be restored to the positions occupied by them at the time of the call." Pub. L. No. 64-242, 39 Stat. 619, 624. The Selective Training and Service Act of 1940 required that persons who left jobs in the private sector for military service be restored to their prior positions. Pub. L. No. 76-783, 54 Stat. 885, 890. The Act was renamed and amended a number of times before it was recodified as 38 U.S.C. #8E8E # 2021-26 by the Vietnam Era Veterans' Readjustment Assistance Act of 1974. Pub. L. No. 93-508, 88 Stat. 1578, 1594. This Act extended protection to reservists and state employees. 88 Stat. at 1598-1600. The reemployment provision of the 1940 Act is substantially similar to that of the Act under which Hannah asserts her rights. Cases interpreting past versions of the Act are therefore illuminating.

The Supreme Court wrote in 1946:

3

The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind.

Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284 (1946). This "advantage" was that he was not to be laid off without cause for one year after his return from service. See id. at 284-85, 288-89. In all other respects the returning veteran was treated as if he were on furlough or had taken a leave of absence. See id. at 284-85. He gained no preference by his absence. See id. at 286. The theory that a returning veteran gained advantages in employment by his absence has been discredited. See Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 526 (1949) ("[T]he Act protects the furloughed employee from being prejudiced by any change in the terms of a collective agreement because he is `on furlough,' but he is not to be favored as a furloughed employee as against his fellows. This is the essence of our decision in Fishgold . . . .").

In 1981, the Supreme Court formally buried Fishgold's advantage language in a footnote noting that even the right not to be discharged is "better understood as protection against discrimination that would not have occurred were it not for reserve obligations, than as preferential treatment accorded solely because of reserve status." Monroe v. Standard Oil Co., 452 U.S. 549, 561 n.12 (1981).

At issue in Monroe was 38 U.S.C. § 2021(b)(3), which provided that reemployed reservists were not to be denied retention or promotion because of their reserve obligations; but the Court spoke broadly of the entire Act: "[T]he legislative history. . . strongly suggests that Congress did not intend employers to provide special benefits to employee-reservists not generally made available to other employees" and rather intended a nondiscrimination measure. 452 U.S. at 561; see also Kolkhorst v. Tilghman, 897 F.2d 1282, 1285 (4th Cir. 1990).

The cases addressing the seniority rights of returning veterans echo this discrimination-oriented view of veterans' reemployment rights. In 1958, the Court wrote:

> Its [the section governing seniority rights] very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

McKinney v. Missouri-Kansas-Texas R.R. Co., 357 U.S. 265, 272 (1958). The Court has recognized that "[t]he statutory rights of returning veterans are subject to changes in the conditions of their employment which have occurred in regular course during their absence in military service, where the changes are not hostile devices discriminating against veterans." Ford Motor Co. v. Huffman, 345 U.S. 330, 336 (1953).

The reemployment rights conferred veterans are therefore best understood as antidiscrimination provisions. Congress explicitly adopted this view in the current version of the Act stating that the Act's purposes are to encourage service by eliminating disadvantages, to minimize disruption, and to prohibit discrimination. See 38 U.S.C.A. § 4301 (West Supp. 1998). The House report noted that "[t]hese are the same purposes that were the basis of the enactment of the initial provisions in 1940 and have been the basis for all subsequent amendments and recodifications." H.R. Rep. No. 103-65, at 20 (1994), reprinted in 1994 U.S.C.C.A.N. 2449, 2453. It is clear that the provisions of the Act conferring reemployment rights on veterans are designed to prevent loss by virtue of service, not assure gain.

III

Hannah was not penalized by reason of her absence from her civilian job. She was treated no differently than her fellow employees. All employees of the Commonwealth's Attorney's office were asked to resign from their positions. Eleven of thirty-nine people were employed by Hicks after being considered for retention by his administration. The majority of Hannah's fellow employees were not reem-

5

ployed by Hicks. To require that Hannah be reemployed by Hicks would be to give her a benefit that her fellow employees did not receive. Nothing in the Act confers such an advantage.

The judgment of the district court is affirmed.

AFFIRMED