NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICHAEL FARIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

_____

2022-1561

_____

Petition for review of the Merit Systems Protection Board in No. SF-4324-21-0370-I-1.

_____

Decided: September 22, 2022

_____

MICHAEL FARIS, Prattville, AL, pro se.

DANIEL F. ROLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

_____

Before MOORE, *Chief Judge*, HUGHES and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Michael Faris appeals from an order of the Merit Systems Protection Board ("MSPB") denying his request for corrective action.  Because we agree with the MSPB's determination, we affirm.

I

Mr. Faris was hired as a civilian employee by the United States Air Force ("USAF") in 2012 and continued in that position until his resignation in 2013. SAppx. 7-9.[1]  In 2014, Mr. Faris returned to his position and later that year he was promoted.  SAppx. 10-12.

During his civilian service, Mr. Faris was intermittently put on leave without pay ("LWOP") status while he served in the military.  *See, e.g.*, SAppx. 13-48.  This happened several times between April 2016 and March 2020.  *Id.*  In addition, between April 3 and April 7, 2017, Mr. Faris participated in inactive duty training with the National Guard.  SAppx. 118-23; Appx. 7.[2]

As the MSPB explained, "[o]rdinarily, an employee's retirement contributions are funded through deductions from his pay.  5 U.S.C. § 8422.  No deductions are made when an employee is in a nonpay status, such as military LWOP."  Appx. 4.  Mr. Faris wanted to continue to receive retirement credit when he was on LWOP status.  The Federal Employees' Retirement System ("FERS") requires that "to receive credit for this period of military service toward civilian retirement," an employee on LWOP status must pay a military deposit.  SAppx. 51; *see also* Appx. 2.

---

[1]    "SAppx." citations refer to the appendix filed concurrently with Respondent's brief.

[2]    "Appx." citations refer to the appendix filed concurrently with Petitioner's brief.

Therefore, Mr. Faris initially paid a military service deposit for each period he was on LWOP from his civil-service job. *See* SAppx. 55-62.

In 2020, after having paid the deposit several times over the course of years, Mr. Faris changed tack and filed a Form 1010 with the Department of Labor, alleging that the deposit requirement violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335. *See, e.g.*, SAppx. 63-66. USERRA provides employment protections for military service members. *See* 38 U.S.C. § 4311(a) ("A person who . . . performs, [or] has performed, . . . service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . performance of service . . . .").

After reviewing Mr. Faris' submissions, the Department of Labor concluded that the evidence did not support a USERRA violation. SAppx. 67-68. Mr. Faris appealed that determination to the MSPB, SAppx. 1-6, which denied his request for corrective action, Appx. 1-20.

Mr. Faris, appearing pro se, timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

We review the MSPB's interpretation of a statute or regulation de novo. *Bannister v. Dep't of Veterans Affs.*, 26 F.4th 1340, 1342 (Fed. Cir. 2022). We set aside its "action, findings, or conclusions" only if we find they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

To make out a USERRA claim under 38 U.S.C. § 4311, an employee must show that "(1) they were denied a benefit of employment, and (2) the employee's military service was 'a substantial or motivating factor' in the denial of such a benefit." *Adams v. Dep't of Homeland Sec.*, 3 F.4th 1375, 1377 (Fed. Cir. 2021). "However, when the benefit in question is only available to members of the military, claimants do not need to show that their military service was a substantial or motivating factor." *Id.* at 1377-78. Therefore, because Mr. Faris' claims "concern benefits only available to military servicemembers," he need only show that he was denied a benefit of employment. Appx. 4. Also, in considering the applicable statutory provisions, where there is doubt as to the meaning of Congress' chosen text, we "give each [statutory provision] as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).

## III

Mr. Faris argues that he was denied a benefit of employment because he was required to make deposits to obtain FERS credit during the times he was on LWOP status for military service. *See, e.g.*, Pet. Br. 4. Mr. Faris also argues that he was denied a benefit of employment when the agency did not allow him to make a deposit and receive FERS service credit during his week of inactive duty National Guard training in April 2017. *Id.* We consider each claim of error in turn.[3]

---

[3]    In coming to our conclusion, we have considered, in conjunction with our review of the entire record, Mr. Faris' informal brief (ECF No. 8), his informal reply brief (ECF No. 18), and the memorandum he filed in lieu of oral argument (ECF No. 24).

A

Mr. Faris argues that the FERS statutory scheme, by requiring him to pay a deposit to receive FERS credit for periods of military service while he was on LWOP from his civilian job, denies him the USERRA-protected benefit of receiving FERS credit *without* paying a deposit. *See* Pet. Br. 4-25. Mr. Faris' contentions are defeated by the clear language of the applicable statutory provisions.

The FERS statute provides that "an employee or Member shall be allowed credit for . . . *each period of military service* performed after December 31, 1956 . . . *if a deposit* (including interest, if any) *is made* with respect to such period in accordance with section 8422(e)."[4] 5 U.S.C. § 8411(c)(1)(B) (emphasis added). Plainly, § 8411(c)(1)(B) requires that an employee seeking credit for a period of military service must make a deposit in order to have such a credit allowed. This unambiguous statutory language compels us to conclude that Mr. Faris is not entitled to credit without paying the deposit. *See Consumer Prods. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

In attempting to evade this straightforward analysis, Mr. Faris points to § 8411(d), which provides that "[c]redit under this chapter shall be allowed for leaves of absence without pay granted an employee while performing military service . . . ." Mr. Faris argues he should be able to "claim rights to benefits" under this provision. Pet. Br. 8-9. However, reading the statute as a whole, as we must, *see, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009)

---

[4] Section 8422(e)(1) describes how to calculate the deposit amount and references the "deposit payable."

("A statute should be construed so that effect is given to all its provisions . . . ."), § 8411(d) merely clarifies that an employee on LWOP status to perform military service is *eligible* to receive FERS credit for his service. It does not absolve him of the obligation to comply with the conditions for obtaining such a credit, including making the deposit required by § 8411(c)(1)(B).

USERRA does not support a different conclusion. To the contrary, the statute explicitly contemplates that "a person who is absent from a position of employment by reason of service in the uniformed services . . . *may be required to pay the employee cost, if any, of any funded benefit continued* . . . ." 38 U.S.C. § 4316(b)(1) & (4) (emphasis added). Another provision of USERRA, § 4316(b)(6), further provides that "[t]he entitlement of a person to a right or benefit under an employee pension benefit plan is provided for under section 4318;" and § 4318 explains that "[a] person reemployed under this chapter shall be entitled to accrued benefits . . . that are contingent on the making of . . . employee contributions . . . *only to the extent the person makes payment to the plan* with respect to such contributions . . . ." 38 U.S.C. § 4318(b)(2) (emphasis added). Hence, USERRA is entirely consistent with the military-deposit requirement.

As Mr. Faris points out, and the USAF does not dispute, a civilian employee in LWOP status who is *not* serving in the military can receive FERS credit for up to six months in any calendar year without making a deposit. *See Bain v. Off. of Pers. Mgmt.*, 978 F.2d 1227, 1230 (Fed. Cir. 1992) ("Taken as a whole, the statutory scheme[] of FERS . . . allow[s] federal employees up to six months per year of retirement credit for leaves of absence . . . ."). This does not make for a USERRA violation, however. As the USAF correctly responds, USERRA expressly provides that a person serving in the military while on LWOP status from their civil-service job may "be required to pay the employee cost, if any, of any funded benefit continued

pursuant to paragraph (1) *to the extent other employees on furlough or leave of absence are so required.*"  38 U.S.C. § 4316(b)(1) & (4) (emphasis added); *see also* Resp. Br. 12-14.  For his USERRA claim, the pertinent comparison is between Mr. Faris' LWOP and employees "having similar seniority, status, and pay" who are on similar "furlough or leave of absence . . . ."  38 U.S.C. § 4316(b)(1)(B); *see also Tully v. Dep't of Just.*, 481 F.3d 1367, 1369 (Fed. Cir. 2007) (holding that "leave of absence" that "triggers a right to equivalent treatment" is one that is "comparable to the leave provided to the service member for military service," and rejecting petitioner's argument that he was entitled to "the best benefits available to any employee for any leave of absence").  Mr. Faris has not shown how such a comparison disfavors him.  Moreover, as the USAF states, "employees on LWOP for reasons besides military service cannot receive more than six months of service credit in a calendar year, whereas employees on LWOP for military service do not face this limitation — a distinction favoring members of the military."  Resp. Br. 14.

Our conclusions are consistent with *Whittacre v. Office of Personnel Management*, 120 M.S.P.R. 114 (2013), on which the MSPB relied in declining to adopt Mr. Faris' interpretation of the relevant statutes.  Appx. 5-7.  In *Whittacre*, the MSPB considered the same statutes we have discussed here and held that when "military service interrupts civilian service, a [FERS] deposit not exceeding the amount that would have been deducted and withheld from his basic pay had he remained in civilian service during the period in question is required."  120 M.S.P.R. at 120.

Because the statutes required Mr. Faris to pay a deposit if he wished to receive FERS credit for his military service time, he was not entitled to receive FERS credit without making a deposit, and therefore Mr. Faris was not denied an employment benefit to which he was entitled.  Accordingly, his USERRA claim fails, and the MSPB did not err in denying his request for corrective action.

B

Mr. Faris also argues that he should have been able to pay a deposit so he could receive FERS credit for his service while he was on LWOP to participate in inactive duty National Guard training from April 3 to 7, 2017. Pet. Br. 25-29. We disagree.

Title 5, § 8411(c)(1) allows for the accrual of FERS credit for military service. "Military service" is expressly defined as "active service." 5 U.S.C. § 8401(31) ("[T]he term 'military service' means honorable active service . . . ."). Therefore, Mr. Faris' inactive duty training is not eligible for FERS credit.

Mr. Faris asserts that the USERRA definition of "service in the uniformed services," which includes "inactive duty training," 38 U.S.C. § 4303(13), governs which "military service" can count for FERS credit. Pet. Br. 25-26. We are not persuaded. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Adopting Mr. Faris' view of the statutory scheme would effectively read the definition of "military service" Congress provided in § 8401(31) out of the statute. Therefore, we conclude that Mr. Faris' interpretation of the statutory scheme is incorrect.

Our conclusion is strengthened by the amendment Congress made to § 8401(31) in connection with the enactment of USERRA. At that time, in 1994, Congress amended FERS' § 8401(31) definition of "military service" to add "full-time National Guard duty (as such term is defined in section 101(d) of title 10)," but it did *not* also add "inactive duty training." USERRA, Pub. L. No. 103-353 § 5(c), 108 Stat. 3149, 3174. This omission was clearly intended, as the provision cited to, 10 U.S.C. § 101(d)(5), provides that "'full-time National Guard duty' means training or other duty, *other than inactive duty* . . . ." (emphasis added).

This set of statutory provisions did not entitle Mr. Faris to be offered the opportunity to pay a deposit and receive service credit for his inactive-duty service. Hence, Mr. Faris was not denied an employment benefit under USERRA. The MSPB did not err in denying his request for corrective action.

## IV

For the foregoing reasons, we conclude that the MSPB's decision denying Mr. Faris' request for corrective action is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. We have considered Mr. Faris' additional arguments and find them unpersuasive. Accordingly, we affirm.

**AFFIRMED**

COSTS

No costs.